John Archie MALLOY, Plaintiff,

v.

U. S. DEPARTMENT OF JUSTICE
et al., Defendants.

Civ. A. No. 77–440.

United States District Court,
District of Columbia.

June 22, 1978.

John Archie Malloy, pro se.

William H. Briggs, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is an action brought *pro se* by the plaintiff under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), against the Department of Justice and the Federal Bureau of Investigation (FBI). By letter of June 5, 1975, plaintiff, who is presently incarcerated as a result of his conviction for bank robbery, requested from the Department of Justice the "entire investigative file" that led to his indictment and trial for bank robbery. On June 15, 1977, the Department released to plaintiff 29 documents consisting of 238 pages. The Department withheld portions of 22 documents pursuant to various FOIA exemptions. In this action, plaintiff apparently seeks disclosure of all of the withheld portions of the investigative file.

Defendants have moved for summary judgment, contending that the material in the investigative file withheld from the plaintiff is protected from disclosure by Exemptions 2, 3, 6 and 7(C, D, E, and F) of FOIA, 5 U.S.C. § 552(b)(2), (3), (6), (7)(C-F). Plaintiff has not responded to the motion for summary judgment. After carefully considering the arguments raised by defendants, the Court has concluded that the information withheld by the defendants is exempt from disclosure.[1]

■ First, defendants contend that certain administrative markings which were excised from many of the documents in the investigative file are protected from disclosure by Exemption 2. This exemption covers matters that relate "solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The Court agrees that the excised administrative markings reflect the type of routine, "house-keeping" matters intended to be protected by Exemption 2. *See Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 192–194, 523 F.2d 1136, 1141–43 (1975). These markings presumably do not reflect "substantial matters which might be the subject of legitimate public interest." *Id.* at 193, 523 F.2d at 1142.

■ Second, defendants contend that certain material routinely compiled by the FBI in bank robbery cases is also within the scope of Exemption 2. This material includes information about security devices at the robbed bank, a layout drawing of the bank, and leads developed during the investigation. The Court questions whether this

1. The Court does not believe that *in camera* inspection of the withheld information is necessary. Defendants argue that particular types of information contained in the file fall within specific FOIA exemptions; a review of the information itself is not necessary to resolve the legal issues raised by defendants' arguments. Clearly, *in camera* inspection is not necessary in every FOIA action. *See EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

material is so insignificant that it lacks any substantial interest to the public; the Court need not resolve this question, however, because it concludes that this material is protected from disclosure by Exemption 7(E). The Court also concludes, as defendants have specifically argued, that information about bait money taken during the bank robbery is protected by Exemption 7(E).

Exemption 7(E) applies to "investigatory records compiled for law enforcement purposes," the production of which would "disclose investigative techniques and procedures." 5 U.S.C. § 552(b)(7)(E). The Conference Report discussion of Exemption 7(E), which was enacted as part of the 1974 FOIA amendments, indicates that the exemption extends to investigative techniques and procedures generally unknown to the public. *See* Joint Comm. Print, House Comm. on Government Operation and Senate Comm. on the Judiciary, Freedom of Information Act and Amendments of 1974, 94th Cong., 1st Sess. 229 (1975); *Ott v. Levi,* 419 F.Supp. 750, 752 (E.D.Mo.1976). In the case at bar, defendants have submitted in support of their motion for summary judgment the affidavit of John Pramik of the FBI. Based on the representations in this affidavit,[2] the Court believes that release of information about bait money, bank security devices, investigative leads, and the bank layout, would result in the disclosure of investigative techniques and procedures not commonly known to the public. The Court therefore concludes that this information was properly withheld pursuant to Exemption 7(E).

 Third, defendants assert that FBI criminal history records (rap sheets) contained in the investigative file and relating to persons other than the plaintiff are protected by Exemptions 3 and 6. The Court agrees that these records are within the scope of Exemption 6,[3] which covers "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Initially, the Court concludes that the rap sheets of third parties are "similar files" for the purposes of Exemption 6. These documents list instances when an individual has been arrested and charged, regardless of whether the arrests and charges resulted in a conviction. Disclosure of this information pursuant to FOIA raises privacy considerations similar to those presented by the disclosure of the intimate details contained in an individual's personnel or medical file; and public disclosure of such information could result in embarrassment to an individual and substantial injury to his reputation. *See Department of the Air Force v. Rose,* 425 U.S. 352, 376–77, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (1974). Moreover, the term "similar file" should not be interpreted narrowly when privacy values are clearly implicated. *See Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133, 135 (3d Cir. 1974).

 The Court must additionally consider whether disclosure of the rap sheets would result in a clearly unwarranted invasion of personal privacy. The Court must "[review] the matter *de novo* to balance the right of privacy of affected individuals against the right of the public to be informed." *Getman v. NLRB,* 146 U.S.App. D.C. 209, 213, 450 F.2d 670, 674 (1971). In the case at bar, the Court concludes that the invasion of privacy resulting from public disclosure of arrest records of persons other than the plaintiff clearly outweighs any interest the public may have in the disclosure of such records. In short, the Court is unable to identify any public interest to be served by disclosure of the arrest records; the general public *would learn* nothing from the records about agency action, *cf. NLRB v. Sears, Roebuck & Co.,* 421

2. *See* Affidavit of John J. Pramik, at 9.

3. In support of their Exemption 3 assertion, defendants argue that section 534 of Title 28, United States Code, expressly limits the authority of the Attorney General and his autho-

rized agents to disseminate criminal history records. The Court does not decide whether Exemption 3 protects the rap sheets from disclosure.

U.S. 132, 143 n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), and plaintiff presumably intends to use any information gained from the records solely for personal purposes.[4] Accordingly, the Court holds that the rap sheets in the investigative file of persons other than the plaintiff were properly withheld pursuant to Exemption 6.

■ Fourth, defendants contend that information in the file revealing the identities of bank robbery suspects and FBI agents and employees is protected by Exemption 7(C). This exemption covers investigatory records the disclosure of which would "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In considering the applicability of Exemption 7(C), the Court must engage in the same balancing process contemplated under Exemption 6. *Cf. Department of the Air Force v. Rose,* 425 U.S. at 378–79 n. 16, 96 S.Ct. 1592. In this regard, it appears to the Court that disclosure of the identities of robbery suspects and FBI agents and employees would result in an invasion of these individuals' privacy that far outweighs any public interest in such disclosure. The damage to the suspects' reputations and the possible harassment to FBI agents and employees that may result from disclosure of their identities, when balanced against the lack of any identifiable public interest supporting such disclosure, justifies the conclusion that information revealing the identities of these persons is protected by Exemption 7(C). *See Rafter v. FBI,* 77 Civ. 1131 (S.D.N.Y.1977); *Curry v. DEA,* C.A. 75–1416 (D.D.C.1976); *Ott v. Levi,* 419 F.Supp. 750, 752 (E.D.Mo.1976).

■ Fifth, defendants assert that Exemption 7(D) protects from disclosure information revealing the identities of persons who were interviewed by the FBI and information confidentially received only from these sources. Exemption 7(D) covers investigatory records the disclosure of which would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source." 5 U.S.C. § 552(b)(7)(D). The Conference Report discussion of this exemption makes clear that "the indentity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *See* Joint Comm. Print, House Comm. on Government Operations and Senate Comm. on the Judiciary, Freedom of Information Act and Amendments of 1974, 94th Cong., 1st Sess. 230 (1975). The affidavit of Mr. Pramik in support of defendants' summary judgment motion represents that during the bank robbery investigation the FBI received certain information pursuant to express assurances of confidentiality. The affidavit represents further that, consistent with normal FBI practice, information was received from witnesses to the robbery and local police officers involved in the chase after the robbery pursuant to implicit assurances of confidentiality.[5] Moreover, it appears to the Court that public disclosure of the identities of persons giving information to the FBI will most likely discourage full cooperation by such persons with FBI investigations.[6] With these facts in mind, the Court concludes that information revealing the identities of persons interviewed about the robbery was properly withheld pursuant to Exemption 7(D).

---

**4.** As the Court of Appeals for the District of Columbia Circuit recognized in *Ditlow v. Shultz,* 170 U.S.App.D.C. 352, 357, 517 F.2d 166, 171 (1975), it is unclear whether the balancing required pursuant to Exemption 6 "is to be performed in the context of unrestricted disclosure to the public or of a use-specified release confined to the requesting parties." In the instant action, the Court need not consider which approach is proper because the Court believes that under either approach the invasion of privacy clearly outweighs any possible public interest in disclosure.

**5.** *See* Affidavit of John J. Pramik, at 7–9.

**6.** *See, e. g., American Federation of Government Employees v. Department of the Army,* 441 F.Supp. 1308, 1314 (D.D.C.1977).

Wherefore, the Court having concluded that the material sought by plaintiff is entirely exempt from disclosure under FOIA, the Court will grant defendants' motion for summary judgment.