**Luis Ramos NUNEZ, Plaintiff,**

**v.**

**DRUG ENFORCEMENT ADMINISTRATION, U. S. DEPARTMENT OF JUSTICE, Defendant.**

**No. 79 Civ. 4004.**

United States District Court, S. D. New York.

July 18, 1980.

Luis Ramos Nunez, plaintiff pro se.

William M. Tendy, U. S. Atty., S. D. N. Y., by Barbara L. Schulman, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Luis Ramos Nunez (the "plaintiff" or "requester") commenced this lawsuit against the Drug Enforcement Administration ("DEA" or the "Government") under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") and the Privacy Act, 5 U.S.C. § 552a to compel disclosure of certain materials. Before me is the Government's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56, and plaintiff's cross–motion to "Require Detailed Justification, Itemization and Indexing." For the reasons set forth below, the Government's motion is granted.

The dispute began in October of 1978 when Mr. Nunez filed a request with DEA, pursuant to the Privacy Act and the FOIA, seeking the release of

[a]ll statements of witnesses, memos, notes, and findings concerning investigations and other documents pertaining to the matters of criminal cases arising out of Puerto Rico (76 Cr. 137) and New York (77 Cr. 100) criminal numbers.

Wingate Affidavit Exhibit A. The requested documents relate to two DEA investigations involving Mr. Nunez. One investigation led to Docket No. 77 Cr. 100, a criminal prosecution brought in the Southern District of New York against Nunez and twenty–one co–defendants, ten of whom are still fugitives, on charges of possession and conspiracy to distribute heroin. The other investigation resulted in Docket No. 76 Cr. 137, an indictment returned in Puerto Rico charging Nunez and a co–defendant with possession and distribution of cocaine.[1]

On January 31, 1979, the DEA informed Nunez that while information in the DEA Investigative Reporting and Filing System was expressly exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a(j)(2), forty–eight (48) documents were being released in accordance with the FOIA. With respect to two hundred and eighteen (218) pages, DEA claimed exemptions under the FOIA. Wingate Affidavit Exhibit B. On June 5, 1979, plaintiff requested the Department of Justice Office of Privacy and Information Appeals ("OPIA") to direct DEA to comply with *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1972) by producing an index of files in their possession ("*Vaughn* index"). Wingate Affidavit Exhibit C. OPIA denied Nunez' request and advised him that a *Vaughn* index was not required

---

**1.** Mr. Nunez was convicted after trial on both the New York and Puerto Rico charges. Federal authorities are still searching for the ten co–defendants in the New York prosecution who fled before trial.

at the administrative review level. Wingate Affidavit Exhibit D. In August 1979, plaintiff commenced this action. Thereafter, OPIA reviewed the substance of the withholdings for the first time and released an additional sixty–one (61) pages and supplemental portions of ten (10) documents previously released. Wingate Affidavit ¶ 6a.[2]

■ After a thorough review of the Government's detailed submission, I find that the Government correctly concluded that the documents in question were exempt from disclosure under the FOIA and the Privacy Act. First, the Privacy Act was intended to permit access by individual citizens to certain government records pertaining to those persons so as to ensure the accuracy of such records. Congress did not intend, however, to extend this right to inspection to records compiled for law enforcement purposes. *See* S.Rep.No.93–1183, 93rd Cong., 2d Sess., *reprinted* in [1974] U.S.Code Cong. & Admin.News pp. 6916, 6938. Indeed, the Privacy Act expressly exempts from its access and challenge provisions, the records of any agency whose "principal function" pertains to the "enforcement of criminal laws, including police efforts to reduce crime or to apprehend criminals . . . ." 5 U.S.C. § 552a(j)(2). Since it is clear that the DEA is such an agency, and that records sought by plaintiff related to DEA's law enforcement activities, Wingate Affidavit ¶¶ 7, 14, the plaintiff has no right to access to DEA's Investigative Reporting and Filing System records under the Privacy Act. *See* 28 C.F.R. § 16.98(c)(8) (1979).

■ The Government has produced an itemized index, carefully cross–referenced

to the appropriate FOIA exemption, which amply supports its refusal to disclose the material withheld.[3] *See generally, Lead Industries Ass'n v. Occupational Safety and Health Administration,* 610 F.2d 70 (2d Cir. 1979); *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1972). First, DEA's refusal to disclose "violators identifiers and other administrative markings which are used for the purpose of storing, locating, retrieving or transmitting DEA documents internally," Wingate Affidavit ¶¶ 10a and 17–36, 38, 39, 46, 48, 50–51, 56, 62–68, 70, 72–77, 80–82, 83–83a, 86, 89, 90, 91–99, falls squarely within exemption 2 of the FOIA, 5 U.S.C. § 552(b)(2). Section 552(b)(2) has been construed to exempt internal administrative and clerical markings and identifiers from disclosure, *Nix v. United States,* 572 F.2d 998 (4th Cir. 1978); *Scherer v. Kelley,* 584 F.2d 170 (7th Cir. 1978); *Maroscia v. Levi,* 569 F.2d 1000 (7th Cir. 1977); *Malloy v. Department of Justice,* 457 F.Supp. 543 (D.D.C.1978). Absent a showing that there is a "legitimate public interest" in disclosure, *Department of Air Force v. Rose,* 425 U.S. 352, 369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976), administrative markings and identifiers are protected by the express provisions of the FOIA. In this case, there is no perceptible public interest in the disclosure of administrative and clerical markings.[4]

■ Second, DEA properly relied on 5 U.S.C. § 552(b)(7)(A) in refusing to disclose information concerning its efforts to locate Mr. Nunez' fugitive codefendants. *See* Wingate Affidavit ¶¶ 17–19, 21, 22–24, 26–31. Section 552(b)(7)(A) exempts from disclosure:

---

**2.** OPIA did not receive DEA's disclosure until after the filing of this lawsuit. The Government did not construe plaintiff's June 5, 1979 request for a *Vaughn* index as an application for administrative reconsideration of the original disclosure decision. Government's Brief at 3; Wingate Affidavit '' 6a.

**3.** In all, the Government withheld one hundred and forty- nine (149) pages in their entirety and portions of the one hundred and nine (109) pages disclosed.

**4.** The violator identifier codes withheld by DEA are also exempt under 5 U.S.C. § 552(b)(7)(A). Their release would "interfere with law enforcement" by revealing the "priority of investigations, type of criminal activities, geographical areas, types of controlled substances involved, agencies involved in the investigation, violator rating and the like." Wingate Affidavit ' 10a.

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings.

5 U.S.C. § 552(b)(7)(A). Nothing could be clearer than that the FOIA does not require the disclosure of information uncovered in an "ongoing criminal investigation." *Steinberg v. IRS*, 463 F.Supp. 1272, 1274 (D.Fla. 1979). *See also National Public Radio v. Bell*, 431 F.Supp. 509, 513–14 (D.D.C.1977).

■ DEA withheld certain other materials in order to protect the personal privacy of witnesses, accomplices, conspirators or innocent third parties. Wingate Affidavit ¶¶ 18, 24–26, 30–32, 34–35, 38, 47, 53–58, 60–61, 63–70, 87, 89, 90, 96, 99. By the enactment of Section 552(b)(7)(C), which exempts from disclosure records constituting "an unwarranted invasion of personal privacy," Congress undoubtedly intended to protect personal privacy from the reach of FOIA disclosure. *See* 120 Cong.Rec.S. 9329–9330 (daily ed., May 30, 1974). Indeed, courts have uniformly held that § 552(b)(7)(C) authorizes the Government's nondisclosure of the names, addresses, telephone numbers and other personal data pertaining to individuals mentioned in law enforcement records. *See, e. g., Lamont v. Department of Justice*, 475 F.Supp. 761, 776–77 (S.D.N.Y.1979); *Day v. Federal Bureau of Investigation*, No. 76–3209 (S.D. N.Y. March 10, 1979), slip op. at 3; *Malloy v. Department of Justice*, 457 F.Supp. 543 (D.D.C.1978); *Serbian Eastern Orthodox Diocese v. Federal Bureau of Investigation*, No. 77–1404 (D.D.C. July 13, 1978), slip op. at 6–7.

The protection of the identities of confidential sources, as well as confidential information received from those sources, fully justified DEA's refusal to comply with plaintiff's FOIA request. Exemption 7(D), 5 U.S.C. § 552(b)(7)(D) authorizes DEA to withhold

investigatory records compiled for law enforcement purposes but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation . . . confidential information furnished only by a confidential source.

The enactment of exemption 7(D) was designed to provide "blanket protection for any information supplied by a confidential source," *Church of Scientology v. Department of Justice*, 410 F.Supp. 1297, 1302 (C.D.Cal.1976), as well as the "informer" or "source" itself. *See Nix v. United States*, 572 F.2d 998, 1003 (4th Cir. 1978); *Lamont v. Department of Justice, supra,* at 779; *Mitsubishi Electric Corp. v. Department of Justice*, No. 76–0813 (D.D.C. April 1, 1977), slip op. at 6. *See also* 120 Cong. Rec.S. 9330 (daily ed., May 30, 1974). Section 552(b)(7)(D) simply acknowledges the need to afford such confidential sources (and the information obtained from such sources) the maximum feasible protection in order to encourage future cooperation. Where, as here, individuals and institutions come forward to provide law enforcement authorities with confidential information in connection with a criminal investigation, Wingate Affidavit ¶¶ 19, 20, 24–26, 28, 31, 32, 34, 36, 40, the Government is entitled to protect such sources and the information provided by them from compelled disclosure under the FOIA.

■ Finally, there is no question that the Government is authorized to withhold information from the plaintiff in order "[to protect] the life or physical safety of law enforcement personnel." 5 U.S.C. § 552(b)(7)(F). *See* Wingate Affidavit ¶¶ 17–44, 46–48, 51, 62–70, 89–99. Here, the disclosure of the names of DEA personnel involved in the investigations in question are certainly entitled to the protection envisioned by subsection (b)(7)(F). *See* Wingate Affidavit, ¶¶ 82–83.

Accordingly, for the reasons stated above, the Government's motion to dismiss the complaint is granted.

So ordered.