**Ernest MALIZIA, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, and Its Agents, Subordinates and Employees, Defendants.**

No. 80 Civ. 0433.

United States District Court,
S. D. New York.

July 6, 1981.

Ernest Malizia, pro se.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Twila L. Perry, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Ernest Malizia, a/k/a Harry Luppes, appearing pro se, is currently incarcerated in the United States Penitentiary at Lewisburg, Pennsylvania. He was one of seven major international narcotics dealers who on September 22, 1974 escaped from the Federal House of Detention ("FHD") in New York City.[1] The jailbreak prompted an investigation by the Federal Bureau of Investigation ("FBI") to determine possible violations of various federal laws and to locate and apprehend the escaped prisoners, all of whom, according to an FBI report, were considered armed and extremely dangerous. The investigation into the jailbreak and related irregularities in the FHD included massive interviews with inmates, their attorneys and visitors, as well as guards and prison officials, and uncovered the complicity of several of these individuals. The escape was executed through the use of three duplicate keys that had been manufactured outside the FHD from wax molds crafted by accomplices inside the jail who had access to the original keys. The search for the escaped prisoners spanned various regions of the United States and several foreign countries. The crimes under investigation included conspiracy to escape, escape, assisting escape, escape assisted by a federal officer, harboring an es-

---

1. The other escaped prisoners were Enrique Barrera, Gilbert Bornsztcjn, Laurent Fiocconi, Nelson M. Garcia, Amado Lopez and Mario Perna.

caped prisoner and obstruction of a criminal investigation.[2]

Malizia evaded the FBI for 2½ years until his capture on February 4, 1977 at the Miami International Airport. Thereafter he pled guilty in United States District Court for the Southern District of New York to counts of bribery, conspiracy and escape,[3] and was sentenced to five years imprisonment on each count, to run concurrently with each other and consecutively to a ten-year sentence imposed in 1973 on drug charges. He is currently serving these sentences.

After these convictions, plaintiff requested a copy of all records concerning him from the FBI and the Executive Office for United States Attorneys ("Executive Office") pursuant to the Freedom of Information Act ("FOIA")[4] and the Privacy Act.[5] A search of its files by the FBI yielded three so-called "main" files on Malizia: one on the investigation of his role in the escape; a second on the search for his whereabouts; and a third on the fugitive investigation of another of the seven escaped prisoners, Enrique Barrera, which contained substantial information on Malizia. The FBI's search for Barrera terminated after his body was recovered on July 6, 1976, dead of gunshot wounds, from the river Seine in Paris, France.[6] Although over 840 pages of the 104 documents contained in these files were released to Malizia, the FBI and the Drug Enforcement Administration ("DEA"), to which certain files had been referred, determined not to disclose the balance, which contained significant portions of these files, and their decision was all but completely upheld on administrative appeal.

Malizia, in his request to the Executive Office, sought copies of all documents pertaining to him in the files of the United States Attorney's Offices, particularly in those offices for the Southern District of New York, the Southern District of Florida, and the District of New Jersey. The Executive Office's initial search of the indices of the systems of records in the District of New Jersey and the Southern District of Florida failed to reveal any material pertaining to the request, although later a file was found in the Southern District of Florida concerning Malizia's removal to the Southern District of New York following his arrest at the Miami International Airport. This file consisted of three pages that were released to Malizia in their entirety and four pages originating from the FBI that were processed as part of the other FBI files. The file of the United States Attorney's Office for the Southern District of New York contained material on Malizia, some of which was sent to the FBI and the DEA, from which it had originated, and the remainder of which was withheld in its entirety under claimed exemptions. After Malizia's administrative appeal, which resulted in a partial remand, fifty-one pages in this file were determined to be releasable, but five documents are still withheld in their entirety. The material sent to the FBI was found previously to have been

---

2. 18 U.S.C. §§ 371, 751(a), 752, 755, 1072 & 1510.

3. 18 U.S.C. §§ 201(b), 371, 751(a).

4. 5 U.S.C. § 552.

5. 5 U.S.C. § 552a. Because, as is discussed later, all of the records responsive to Malizia's request are criminal law enforcement records, and as such have been exempted from disclosure under the Privacy Act, 5 U.S.C. § 552a(j)(2) & (k)(2); 28 C.F.R. §§ 16.81(a)(4), 16.96(a)(1) & 16.98(c)(8); *see Irons v. Bell*, 596 F.2d 468, 471 (1st Cir. 1979); *Nunez v. DEA*, 497 F.Supp. 209, 211 (S.D.N.Y.1980); *Varona Pacheco v. FBI*, 456 F.Supp. 1024, 1034–35

(D.P.R.1978), the Court will focus exclusively on Malizia's FOIA claims.

6. Defendants intimate that the file on Barrera might well not have been classified as a file on Malizia and thus would have been entirely outside the scope of his request. Aff. of Byron Lamar Price ("Price Aff.") at 7–8. Given, however, defendants' admission that "considerable information regarding plaintiff" is contained in the Barrera file, *id.* at 7, and that substantial portions of that file have already been released to Malizia, the Court has applied the same standards that would be applied if the file focused on Malizia.

made available to Malizia as part of the file at issue in this suit.[7]

Malizia brought this suit to compel release of the undisclosed documents. Defendants now move for summary judgment on the basis of the *Vaughn v. Rosen*[8] affidavits submitted and without resort to *in camera* inspection. Malizia responds by requesting the Court in effect to examine the withheld material *in camera*.[9]

Although § 552(a)(4)(B) provides in pertinent part that a district court "may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions . . . and the burden is on the agency to sustain its action," an *in camera* inspection is not automatic and is not required when the Government's affidavits and actions make a plausible case for exemption.[10] While this Court has not hesitated to make a detailed *in camera* inspection of voluminous documents covering a period of almost thirty years,[11] there is need for restraint when the agency

makes an appropriate showing for exemption. An agency may sustain its burden of proof as to claimed exemptions by submission of affidavits that describe with reasonable specificity the nature of the documents at issue and the claimed justification for nondisclosure, and that indicate the requested material logically comes within the claimed exemption.[12] The mere possibility that "some bits of non-exempt material may be found among exempt material, even after a thorough agency evaluation," does not automatically trigger *in camera* inspection.[13] Only when the record is vague or the agency claims too sweeping or suggestive of bad faith should a district court conduct an *in camera* examination to look for segregable non-exempt matter.[14] Similarly, when it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, *in camera* inspection is both unnecessary and unwise.[15]

Upon its careful, line-by-line review of the Malizia files as redacted, the context of deleted or withheld material and the

---

**7.** While the material sent to the DEA has not been returned to the Executive Office or submitted to the Court, Aff. of Susan A. Nellor ("Nellor Aff."), at 6–7; Letter from U.S. Attorney's Office, SDNY (May 27, 1981), the affidavits submitted by the Government, as the following discussion will show, make a sufficiently compelling case for exempting the entire Malizia file from disclosure as to permit the Court to dispose of this material along with the documents submitted.

**8.** 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**9.** Malizia also requests that the Court direct the Internal Revenue Service ("IRS") to comply with the procedures for justifying a refusal to release information set out in *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). While it is recognized that pro se proceedings are to be treated liberally, this does not permit plaintiff to dispense with required procedures. It does not appear that Malizia has exhausted his administrative remedies as to the IRS, and accordingly this portion of his request is denied. *See Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979); *Marschner v. Department of State*, 470 F.Supp. 196, 198 (D.Conn.1979).

**10.** *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 87 (2d Cir. 1979) (Friendly, J.); *Weissman v. CIA*, 565 F.2d 692, 696–98 (D.C. Cir. 1977).

**11.** *Lamont v. Department of Just.*, 475 F.Supp. 761 (S.D.N.Y.1979).

**12.** *Lesar v. United States Dep't of Just.*, 636 F.2d 472, 481 (D.C. Cir. 1980); *see EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**13.** *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977); *see Lesar v. United States Dep't of Just.*, 636 F.2d 472, 481 (D.C. Cir. 1980) (Court is to accord "substantial weight" to agency affidavits); *Goland v. CIA*, 607 F.2d 339, 358 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (same).

**14.** *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979); *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978); *Weissman v. CIA*, 565 F.2d 692, 697–98 (D.C. Cir. 1977).

**15.** *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979); *Weissman v. CIA*, 565 F.2d 692, 698 (D.C. Cir. 1977).

*Vaughn* affidavits setting forth the bases on which the information is asserted to be exempt, the Court is satisfied that defendants have fully sustained their burden of proof as to the claimed exemptions and accordingly grants defendants' motion for summary judgment.

*Exemption 1*

■ Under Exemption 1, defendants must establish that withhold matters are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact classified pursuant to Executive Order."[16] Under this exemption, defendants seek to withhold air-tels, teletypes, letters and memoranda transmitted between the FBI and various foreign liaison offices. The documents at issue are classified under Executive Order 12065,[17] which sets forth detailed procedural mandates for original and continued classification of material and two general substantive requirements: (1) that the information concern a specified "category" of data related to national security, including "foreign government information,"[18] and (2) that "an original classification authority also determines that [the information's] unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security."[19]

An affidavit submitted by the FBI establishes that the procedures for agency review of classified documents were followed in this case.[20] Prior to their submission to the Court, the documents were re-examined by an FBI Special Agent, designated by the Attorney General of the United States as both an original Top Secret classification authority and a de-classification authority, who found that they continued to meet the prescribed classification requirements.[21] The material sought to be withheld under Exemption 1 has been classified either "Secret" or "Confidential,"[22] and each such paragraph has been justified separately.

All of the material claimed to fall under this exemption is said to concern "foreign government information."[23] "Foreign government information" is defined as "information that has been provided to the United States in confidence by, or produced by the United States pursuant to a written joint arrangement requiring confidentiality with, a foreign government or international organization of governments."[24] Unauthorized disclosure of foreign government information is presumed to cause at least identifiable damage to the national security.[25]

Both types of foreign government information are included in the material here at issue. As for information claimed to originate from a foreign government, the majority of these documents on their face indicate they are international correspondence between FBI domestic headquarters and "legats" stationed in various foreign capitols. As already noted, the escapees from the FHD were suspected of having fled to

16. 5 U.S.C. § 552(b)(1).

17. 43 Fed.Reg. 28949 (June 28, 1978).

18. Executive Order ("EO") 12065 § 1–301(b).

19. *Id.* § 1–301 to 1–302.

20. Aff. of Gary L. Stoops ("Stoops Aff.") at 3–5.

21. *Id.* at 1, 5.

22. Sections 1–102 to 1–104 of Executive Order 12065 detail the three classification standards: "Top Secret," "Secret" and "Confidential." Information is "Top Secret" if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security. Information is "Secret" if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. Information is "Confidential" if its unauthorized disclosure reasonably could be expected to cause identifiable damage to the national security.

23. Stoops Aff. at 6; *see* EO 12065 § 1–301(b).

24. EO 12065 § 6–103.

25. *Id.* § 1–303; *see Lamont v. Department of Just.*, 475 F.Supp. 761, 770 (S.D.N.Y.1979); *cf. Snepp v. United States*, 444 U.S. 507, 512, 100 S.Ct. 763, 767, 62 L.Ed.2d 704 (1980) (continued availability of foreign sources depends on CIA's ability to guarantee security of information).

foreign countries, a suspicion that was reaffirmed by the gruesome discovery of Barrera's body in Paris. Accordingly, there is no reason to doubt the statements of origin contained in the FBI affidavit.

Defendants also seek to withhold under this Exemption information produced by the United States pursuant to a written joint arrangement with a foreign government or international organization of governments. These deleted portions are stated to contain information naming foreign countries, liaison links or the extent of a cooperative endeavor. The context of the deleted segments on international correspondence is consistent with the statements in the affidavits as to their subject matter. Indeed, one segment in Document 91, which was claimed to contain information produced pursuant to a written joint arrangement with a foreign government or international organization of foreign governments showing the extent of a cooperative endeavor but apparently was inadvertently released to Malizia, in fact describes action taken by the United States embassies in Chile and Argentina to apprehend Barrera, evidently in response to information produced by a foreign government. It is clear that, even without the presumption of identifiable damage to the national security that is accorded foreign government information,[26] disclosure of such cooperation with foreign agencies "could not only damage the [FBI's] ability to gather information but could also impair diplomatic relations."[27] Again, the Court finds no reason to disbelieve the affidavits submitted by defendants. To the contrary, the events surrounding the escape and the efforts by law enforcement agencies to apprehend plaintiff and others lend strong support to their credence. Summary judgment on these items thus is granted.

*Exemption 2*

 Under Exemption 2, defendants seek to withhold the symbol numbers of informants and other information used to identify a source. Exemption 2 exempts from the FOIA's disclosure requirements information pertaining solely to "the internal personnel rules and practices of an agency."[28] This exemption applies to "routine matters" of "merely internal significance" in which the public lacks any substantial or legitimate interest.[29] If there is some public interest in information otherwise falling under this exemption, the information can be withheld only if necessary to prevent circumvention of agency regulations that would result if procedural manuals and guidelines were disclosed.[30] Courts have upheld under Exemption 2 the withholding of administrative markings such as file numbers, initials, signatures and mail routing stamps, as well as references to prior FBI communications regarding control of an investigation.[31]

Many of the deletions claimed to consist of such administrative markings are limited to the space in which, for example, a source's identification number would fit and the context of the sentence suggests that a source name or symbol is mentioned, that is, these particular deletions often are followed by "advised that" and the substantive information revealed. No evidence is presented to impugn the good faith of the Government's affidavits.

The Court is of the view that there is no legitimate public interest in the FBI's practice of labelling and identifying its sources. Moreover, significant harm to a source and

**26.** EO 12065 § 1–303.

**27.** *Lamont v. Department of Just.*, 475 F.Supp. 761, 770 (S.D.N.Y.1979).

**28.** 5 U.S.C. § 552(b)(2).

**29.** *Department of Air Force v. Rose*, 425 U.S. 352, 370, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976); *Lesar v. United States Dep't of Just.*, 636 F.2d 472, 485 (D.C. Cir. 1980); *Jordan v. Department of Just.*, 591 F.2d 753, 763–71 (D.C.

Cir. 1978); *Maroscia v. Levi*, 569 F.2d 1000, 1001–02 (7th Cir. 1977).

**30.** *Department of Air Force v. Rose*, 425 U.S. 352, 364, 96 S.Ct. 1592, 1600, 48 L.Ed.2d 11 (1976).

**31.** *See Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978); *Scherer v. Kelley*, 584 F.2d 170 (7th Cir. 1978), *cert. denied*, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); *Nunez v. DEA*, 497 F.Supp. 209, 211 (S.D.N.Y.1980).

the FBI could result from release of these markings since the accumulation of information known to be from the same source could permit detection and exposure of individuals furnishing information to the FBI in confidence.[32]

This Exemption is also invoked to withhold purely internal administrative material such as instructions regarding investigative coverage of specific matters, information regarding general personnel management procedures, and a diagram of the first floor of the FHD.[33] Again, this information is of no legitimate public interest and if disclosed could be used to circumvent FBI law enforcement efforts. Indeed, recently publicized escape attempts from the Metropolitan Correctional Center in New York City, of which the Court may take judicial notice, fully justify nondisclosure of material such as this. A ruling to the contrary would, upon appropriate request, require a wholesale turning over of a prison's floor and operational plans to the very prisoners confined within it. Accordingly, the Court grants summary judgment as to these items.

The Government also seeks to withhold under this Exemption, in conjunction with Exemption 7(C), information assertedly unrelated to the investigations under review that has been recorded as a matter of administrative convenience and that if disclosed would result in an unwarranted invasion of the informant's privacy. This information appears to have been disclosed by various voluntary informants and persons

interviewed as part of the information provided to FBI agents. Such substantive matter, albeit of an allegedly private nature unrelated to the investigations in question, is far from the routine "house keeping" material that Exemption 2 was designed to protect.[34] As will be discussed, this material is more appropriately withheld under Exemption 7(C).

### Exemption 3

■ Exemption 3 permits the withholding of material "specifically exempted" from disclosure by another statute when that statute (a) leaves no discretion on the issue or (b) establishes particular criteria for withholding or refers to particular matters to be withheld.[35]

#### 1. Grand Jury Testimony

The FBI seeks to withhold under this Exemption FBI reports of testimony before a federal grand jury and witnesses' statements that were read into the record of a federal grand jury. The Executive Office also seeks to withhold transcripts of grand jury testimony. The withholding of all this matter is justified under Exemption 3 read in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure.[36]

■ The grand jury secrecy rule codified in Rule 6(e) is of ancient origin [37] and prohibits disclosure of anything that "may tend to reveal what transpired before the grand jury." [38] It is a rule that should be enforced rigidly to carry out its purposes.[39]

---

**32.** Price Aff. at 11–12; *see Lopez Pacheco v. FBI*, 470 F.Supp. 1091, 1103 (D.P.R.1979).

**33.** Price Aff. at 12.

**34.** *Department of Air Force v. Rose*, 425 U.S. 352, 370, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976); *Lesar v. United States Dep't of Just.*, 636 F.2d 472, 485 (D.C.Cir.1980); *Jordan v. Department of Just.*, 591 F.2d 753, 763–71 (D.C. Cir.1978); *Maroscia v. Levi*, 569 F.2d 1000, 1001–02 (7th Cir. 1977).

**35.** 5 U.S.C. § 552(b)(3).

**36.** The FOIA does not affect the traditional role of grand jury secrecy codified in Rule 6(e). *Hiss v. Department of Just.*, 441 F.Supp. 69, 70 (S.D.N.Y.1977); *see FAA Administrator v. Rob-*

ertson, 422 U.S. 255, 264, 95 S.Ct. 2140, 2146, 45 L.Ed.2d 164 (1975); *Thomas v. United States*, 597 F.2d 656 (8th Cir. 1979).

**37.** *United States v. Kahaner*, 203 F.Supp. 78, 86 (S.D.N.Y.1962).

**38.** *United States v. Armco Steel Corp.*, 458 F.Supp. 784, 790 (W.D.Mo.1978), *followed in In re Grand Jury Investigation*, 610 F.2d 202, 216 (5th Cir. 1980) *and United States v. Gold*, 470 F.Supp. 1336, 1350 (N.D.Ill.1979).

**39.** *See United States v. Kahaner*, 203 F.Supp. 78, 86 (S.D.N.Y.1962); *United States v. Costello*, 119 F.Supp. 159, 160 (S.D.N.Y.1954); *cf. Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) (purposes of grand jury).

The material sought to be withheld all would tend to reveal what transpired before the grand jury. Plaintiff makes no case for engrafting an exception on the traditional rule to justify lifting the veil of secrecy in this case.[40] That minutes were made available to persons or agencies authorized under the Rule to receive them does not constitute an automatic waiver in favor of others. To so hold would mutilate the Rule.

█ Malizia argues, however, that 18 U.S.C. § 3500, requires disclosure of the grand jury transcripts despite the secrecy requirements of Rule 6(e). The purpose of § 3500, however, is to provide the defense at a criminal trial with a means of impeaching a government witness, not to allow an unrestrained search through the government's files.[41] As the statute expressly provides, prior statements of a government's witness are made available to a criminal defendant only as they "relate to the subject matter of the testimony of the witness."[42] Thus, any § 3500 material is beyond reach in an FOIA action.[43] Summary judgment thus is granted as to these documents.

### 2. CIA Personnel

█ At the request of the Central Intelligence Agency ("CIA"), defendants seek to withhold the identity of a CIA employee[44] under Exemption 3 read in conjunction with 50 U.S.C. § 403g, which exempts the CIA from the provisions of any law that require it to disclose the names of its agents. Section 403g qualifies under Exemption 3 as a statute that "specifically exempt[s]" information from disclosure.[45] The size and location of this deletion supports the claimed exemption, and accordingly summary judgment here is granted.

### 3. "Rap Sheets"

Defendants also seek to withhold FBI criminal history records or "rap sheets" of individuals other than Malizia under Exemption 3 in conjunction with 28 U.S.C. § 534, which requires the Attorney General to "acquire, collect, classify and preserve identification, criminal identification, crime, and other records" and to "exchange these records with, and for the official use of authorized officials of the Federal Government, the States, cities, and penal institutions."[46] The statute also provides that such exchanges are "subject to cancellation" if the receiving department in turn disseminates the records to others.[47] These rap sheets are also assertedly withheld under Exemption 6. Since, as the following discussion demonstrates, the rap sheets are properly withheld under Exemption 6, the Court need not decide whether Exemption 3 would justify their nondisclosure.[48]

---

**40.** Although Rule 6(e) permits disclosure of matters occurring before a grand jury when directed by a court "preliminarily to or in connection with a judicial proceeding," a "judicial proceeding" does not include a FOIA proceeding instituted to obtain such disclosure. *Hiss v. Department of Just.*, 441 F.Supp. 69, 70 (S.D.N.Y.1977).

**41.** *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *United States v. Smaldone*, 544 F.2d 456, 460–61 (10th Cir. 1976), *cert. denied*, 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977); *United States v. Catalano*, 491 F.2d 268, 274 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974).

**42.** 18 U.S.C. § 3500(b).

**43.** Cf. *United States v. Clay*, 495 F.2d 700, 709–10 (7th Cir. 1974); *United States v. Trigg*, 392 F.2d 860, 865 (7th Cir.), *cert. denied*, 391 U.S. 961, 88 S.Ct. 1863, 20 L.Ed.2d 874 (1968).

**44.** Price Aff. at 12.

**45.** *Goland v. CIA*, 607 F.2d 339, 350 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Ray v. Turner*, 587 F.2d 1187, 1196 (D.C. Cir. 1978); *National Comm'n on Law Enforcement & Social Just. v. CIA*, 576 F.2d 1373 (9th Cir. 1978).

**46.** 28 U.S.C. § 534(a). Pursuant to 28 U.S.C. § 534(c), the Attorney General has delegated this responsibility to the FBI. 28 C.F.R. § 0.85(b) (1979); *see Tarlton v. Saxbe*, 507 F.2d 1116, 1122 n.9 (D.C. Cir. 1974).

**47.** 28 U.S.C. § 534(b).

**48.** See *Malloy v. United States Dep't of Just.*, 457 F.Supp. 543, 545 n.3 (D.D.C. 1978).

*Exemption 6*

██ Exemption 6 authorizes withholding "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.[49] Defendants contend that the rap sheets of third parties constitute "similar files" and that disclosure of them would yield a "clearly unwarranted invasion of personal privacy."

The "similar files" language in the statute must be interpreted broadly to include a variety of information of a personal quality.[50] Rap sheets, which list instances when an individual has been arrested and charged, regardless of whether a conviction resulted, clearly raise privacy considerations similar to if not greater than the discipline records of Air Force cadets, which the Supreme Court found to be encompassed by the "similar files" language in Exemption 6.[51] Disclosure of such information could embarrass an individual and substantially injure his reputation.[52] These third parties' rap sheets thus are "similar files" within the meaning of Exemption 6.[53]

Once it is determined that the rap sheets are "similar files," the Court must consider whether disclosure of them would result in a "clearly unwarranted invasion of personal privacy."[54] The Court is required to undertake " 'a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.' "[55] The Court is of the view that the invasion of privacy resulting from public disclosure of arrest records of persons other than Malizia clearly outweighs any interest the public may have in the disclosure of such records, and accordingly approves withholding these files under Exemption 6.[56] Summary judgment accordingly is granted as to these documents.

*Exemption 7*

██ Defendants seek to withhold the bulk of the information at issue under Exemption 7. The threshold determination under Exemption 7 is whether the information in question is found in "investigatory records compiled for law enforcement purposes."[57] "Law enforcement" includes the detection and punishment of law violation.[58] To meet this requirement an agency must demonstrate at least "a colorable claim of a rational nexus" between activities being investigated and violations of federal laws.[59] The compilation of documents in the files in question, as noted, was made during investigations to determine those responsible for the escape from the FHD and to apprehend

**49.** 5 U.S.C. § 552(b)(6).

**50.** *Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133, 135 (3d Cir. 1974), *relied on in Department of Air Force v. Rose,* 425 U.S. 352, 376–77, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976) *and Lamont v. Department of Just.,* 475 F.Supp. 761, 781 (S.D.N.Y.1979).

**51.** *Department of Air Force v. Rose,* 425 U.S. 352, 376–77, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976).

**52.** *Id.; Rural Housing Alliance v. Department of Agric.,* 498 F.2d 73, 77 (D.C. Cir. 1974).

**53.** *Malloy v. United States Dep't of Just.,* 457 F.Supp. 543, 545 (D.D.C. 1978).

**54.** 5 U.S.C. § 552(b)(6).

**55.** *Department of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976) (quoting S.Rep. No. 813, 89th Cong., 2d Sess. 9 (1966)); *see Chamberlain v. Kurtz,* 589 F.2d 827, 841–42 (5th Cir. 1979); *Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133, 136 (3d Cir. 1974); *Getman v. NLRB,* 450 F.2d 670, 674 (D.C. Cir. 1971); *Lamont v. Department of Just.,* 475 F.Supp. 761, 781–82 (S.D.N.Y.1979).

**56.** *Malloy v. United States Dep't of Just.,* 457 F.Supp. 543, 545–56 (D.D.C. 1978).

**57.** 5 U.S.C. § 552(b)(7).

**58.** Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act 6 (1975), *reprinted in* Freedom of Information Act & Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts & Other Documents, Joint Committee Print, 94th Cong., 1st Sess. 516 (1975) ("Source Book").

**59.** *Irons v. Bell,* 596 F.2d 468, 471 (1st Cir. 1979); *see Lamont v. Department of Just.,* 475 F.Supp. 761, 773 (S.D.N.Y.1979).

those who fled.[60] Indeed, this investigation apparently continues to date as to two of the fugitives.[61] This nexus having been established, the "law enforcement purpose" test is met even though others who escaped, including Malizia, have been apprehended and prosecuted.[62]

*Exemption 7A*

Exemption 7A exempts from disclosure legally obtained investigatory records compiled for law enforcement purposes to the extent that production of such records would "interfere with enforcement proceedings."[63] Defendants must demonstrate that disclosure of the material at issue would interfere with actual or concretely proposed enforcement proceedings.[64]

 Defendants claim that release of various parts of one document, a telegram,[65] that they seek to withhold under this Exemption would describe the scope and extent of the investigation currently being conducted to locate and apprehend the two fugitives who apparently remain at large [66] and that such information, if released, could be used to counteract evidence developed by investigators or to concoct alibis.[67] The telegram is sent from the FBI to "LEGAT, PARIS" and concerns escaped fugitives Enrique Barrera, Gilbert Bornsztctjn and Laurent Fiocconi. It thus clearly could have the result defendants claim. A strong case has been made to support the claimed exemption.

60. Price Aff. at 13.

61. *Id.*; Doc. 18, p. 1.

62. *Frankel v. SEC*, 460 F.2d 813, 815–16 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

63. 5 U.S.C. § 552(b)(7)(A); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232, 98 S.Ct. 2311, 2322, 57 L.Ed.2d 159 (1978); *Kanter v. IRS*, 433 F.Supp. 812, 824 (N.D.Ill.1977).

64. *Heublein, Inc. v. FTC*, 457 F.Supp. 52, 55 (D.D.C. 1978); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978).

65. Doc. 76—Telegram.

66. These remaining fugitives apparently are Gilbert Bornszctjn and Laurent Fiocconi.

*Exemption 7C*

 Defendants rely on Exemption 7C to withhold the names of FBI and DEA [68] agents, noninvestigative FBI employees, nonfederal law enforcement officers, and third parties who gave information that might identify these individuals. Exemption 7C provides that investigatory records compiled for law enforcement purposes are exempt from disclosure to the extent that their disclosure would "constitute an unwarranted invasion of personal privacy." [69]

Because this Exemption prevents disclosure only if the resulting invasion of personal privacy is "unwarranted," courts must weigh the importance of the privacy interest and the extent of its invasion against the public interest in disclosure.[70] The balancing is similar to that done under Exemption 6 except that, because Exemption 6 authorized withholding information only if an invasion of privacy is "clearly" warranted, more weight must be given privacy interests under Exemption 7C than under Exemption 6.[71]

This balance repeatedly has been struck against disclosure when the government sought to withhold the names of FBI agents and other nonpolicymaking government officials associated with investigations.[72] The rationale offered for this balance is that "[p]ublic identification of any

67. Price Aff. at 13–14.

68. The withholdings that allegedly include DEA agents are treated later under Exemption 7F.

69. 5 U.S.C. § 552(b)(7)(C).

70. *Getman v. NLRB*, 450 F.2d 670, 674 (D.C. Cir. 1971); *Lamont v. Department of Just.*, 475 F.Supp. 761, 777 (S.D.N.Y.1979).

71. *Nix v. United States*, 572 F.2d 988, 1002 (4th Cir. 1978); *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1136 n.7 (4th Cir. 1977); *Luzalch v. United States*, 435 F.Supp. 31, 36 (D.Minn.), *aff'd*, 564 F.2d 101 (8th Cir. 1977).

72. *Baez v. United States Dep't of Just.*, 647 F.2d 1328, 1337–38 (D.C. Cir. 1980); *Lesar v. United States Dep't of Just.*, 636 F.2d 472, 487–88 (D.C. Cir. 1980); *Maroscia v. Levi*, 569 F.2d

of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives," and that while the right of privacy of these individuals is perhaps minimal, the public interest in identifying them is even less.[73] Similarly, the Exemption shields identities of third parties subject to FBI inquiries, cooperating in such investigations,[74] or even simply mentioned in a FBI report.[75] In light of the seriousness of the crimes under investigation, the potential dangerousness of the individuals sought, the violence that already has met at least one of the escaped prisoners, and the prospect of violence to persons who have cooperated with law enforcement authorities by furnishing information regarding the escapees or the escape, it is evident that the interest of those named in these investigative documents in maintaining their confidentiality is considerable—indeed, essential—for their protection against retaliation. Accordingly, the Court finds that the balance should be struck in favor of nondisclosure in this case as well.[76]

The asserted content of the deletions withheld under Exemption 7C is verified by their size and context, that is, the blacked-out portions generally are limited to spaces into which a name (and an address or occupation) would fit and the context of the sentences indicates a name is mentioned, as for example, when a deletion the size of a name is preceded by "SA," an abbreviation for a FBI Special Agent. The asserted content of other such deletions is verified by the undeleted portions of the documents on which they appear. These documents clearly involve interviews with potential witnesses regarding the crimes under investigation. No evidence having been presented that the deleted material is other than as claimed, the Court grants summary judgment as to these items.

*Exemption 7D*

The FBI relies on Exemption 7D to withhold the names of persons interviewed by it with implied or express assurances of confidentiality. It also seeks to withhold the identities of confidential sources reporting information to the FBI on a regular basis, as well as local law enforcement agencies and commercial institutions who supplied information under implied or express assurances of confidentiality. In addition, the FBI seeks to withhold information about or furnished by the sources when release of it would lead to their identification, as well as other information simply furnished by these confidential sources. The Executive Office seeks to withhold four short documents concerning Malizia's arrest and past criminal record that were generated by local law enforcement offices.

Exemption 7D authorizes withholding investigatory records compiled for law enforcement purposes to the extent that they "disclose the identity of a confidential source."[77] It also authorizes withholding, "in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation . . ., confidential information furnished only by the confidential source."[78] The FBI is clearly a "criminal law enforcement authority,"[79]

1000, 1002 (7th Cir. 1977); *Lamont v. Department of Just.*, 475 F.Supp. 761, 777 (S.D.N.Y. 1979).

**73.** *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978); *see Rural Housing Alliance v. United States Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974); *Lamont v. Department of Just.*, 475 F.Supp. 761, 777 (S.D.N.Y.1979); Source Book at 519–20 (Attorney General's Memorandum).

**74.** *Baez v. United States Dep't of Just.*, 647 F.2d 1328, 1337–38 (D.C. Cir. 1980); *Scherer v. Kelley*, 584 F.2d 170, 176 (7th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979); *Lamont v. Department of Just.*, 475 F.Supp. 761, 776 (S.D.N.Y.1979).

**75.** *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977); Source Book at 333 (Sen. Hart).

**76.** *See, e. g., Stassi v. United States Dep't of Just.*, No. 78–534, slip op. at 4 (D.C. Cir. Mar. 30, 1979); *Lamont v. Department of Just.*, 475 F.Supp. 761, 778 (S.D.N.Y.1979).

**77.** 5 U.S.C. § 552(b)(7)(D).

**78.** *Id.*

**79.** Source Book at 230 (Joint Explanatory Statement of the Committee of Conference).

and, as already indicated, the files at issue were compiled in the course of a criminal investigation.

The threshold determination is whether a given source supplied information in confidence. Although whether the proof shows an express or implied assurance of confidentiality is ordinarily a question of fact,[80] in a massive investigation such as the one at hand it is extremely difficult for an agency to demonstrate on an individual basis that information was furnished under an express or implied assurance of confidentiality. But the very nature of the investigation, centering about escapees described as "armed and extremely dangerous," by itself suggests that express or implied assurances of confidentiality were given to those who were interviewed or voluntarily supplied information to the investigative authorities. The Court thus adheres to the "functional" or "common sense" approach usually employed to find such confidences when an agency such as the FBI " 'depends for its existence upon information being supplied by individuals who in many cases would suffer severe detriment if their identities were known.' "[81] This reading of the Exemption is important not only to protect citizens who voluntarily provide information but also to ensure that they remain willing to provide such information in the future.[82] Because here sources furnished information during an investigation that must have appeared highly serious and sensitive and under circumstances from which assurances of confidentiality reasonably could have been inferred, the Court finds that the information they furnished was supplied in confidence.[83] The protection of Exemption 7D extends to the identity of "confidential sources" not only when they are individuals but also when they are commercial institutions [84] or nonfederal law enforcement agencies.[85] Since the size and context of the deletions withheld under this Exemption support their asserted content, summary judgment is granted as to these materials.

Defendants also seek to withhold under Exemption 7D the information that these confidential sources supplied. Although Exemption 7D permits withholding information compiled by a law enforcement authority in the course of a criminal investigation when "confidential information [is] furnished *only* by [a] confidential source," [86] defendants often assert the privilege upon a mere statement that a confidential source furnished the information in question, without any statement or showing that the information was not also obtained by a nonconfidential source. Nonetheless, this requirement might be met if, "after a reasonable review of the records, there is no reason to believe that identical information was received from another source." [87] Since it is apparent from the content of the deletions that the information withheld was

80. *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1137 (4th Cir. 1977).

81. *Lamont v. Department of Just.*, 475 F.Supp. 761, 779 (S.D.N.Y.1979) (quoting *Kaminer v. NLRB*, 90 L.R.R.M. 2269, 2272 (S.D.Miss. 1975)); *see Tower, Inc. v. Marshall*, 444 F.Supp. 1233, 1235 (D.D.C. 1978).

82. *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977).

83. Price Aff. at 18–21; Nellor Aff. at 13–14; *see Pope v. United States*, 599 F.2d 1383, 1386–87 (5th Cir. 1979); *Nix v. United States*, 572 F.2d 998, 1003 (4th Cir. 1978); *Lamont v. Department of Just.*, 475 F.Supp. 761, 779 (S.D.N.Y.1979); Source Book at 230 (Joint Explanatory Statement of the Committee of Conference).

84. *Keeney v. FBI*, 630 F.2d 114, 117 (2d Cir. 1980); *Terkel v. Kelley*, 599 F.2d 214, 216 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct.

662, 62 L.Ed.2d 642 (1980); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978).

85. *Keeney v. FBI*, 630 F.2d 114, 119 (2d Cir. 1980); *Baez v. United States Dep't of Just.*, 647 F.2d 1328, 1340 (D.C. Cir. 1980); *Lesar v. United States Dep't of Just.*, 636 F.2d 472, 489–91 (D.C. Cir. 1980); *Terkel v. Kelley*, 599 F.2d 214, 216 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978); *Maroscia v. Levi*, 569 F.2d 1000, 1001–02 (7th Cir. 1977). *But see Founding Church of Scientology of Wash., D. C., Inc. v. Miller*, 490 F.Supp. 144, 147–49 (D.D.C. 1980).

86. 5 U.S.C. § 552(b)(7)(D) (emphasis added).

87. Source Book at 521 (Attorney General's Memorandum).

furnished in the course of confidential interviews with witnesses, there is no reason to believe that it was derived from nonconfidential sources. Summary judgment accordingly is granted.

Finally, defendants seek to withhold under this Exemption the dates on which interviews took place on the ground that nondisclosure will "further protect the identity" of a source. Since disclosing the dates of interviews might well permit those familiar with the events under investigation to piece together the identity of sources, particularly in and around the jail where friends and accomplices of the escaped prisoners might have observed these interviews, the withholding of these dates must be approved. Since the size and context of the deletions verify that dates are withheld, summary judgment is granted.

*Exemption 7E*

■ Exemption 7E authorizes withholding investigatory records compiled for law enforcement purposes when production of such records would "disclose investigative techniques and procedures."[88] Defendants claim that release of documents withheld under this Exemption would reveal investigative techniques and procedures not generally known outside the Government.[89] The withholdings contain names and information that would divulge the identity of individuals who both obtained and provided information to the FBI on a voluntary basis under an implied promise of confidentiality. Since these secret sources obviously are a crucial part of the FBI's investigative procedure, and since the context of the deletions supports the claim that such information is withheld, summary judgment is granted.

*Exemption 7F*

■ Finally, defendants rely on Exemption 7F in conjunction with Exemption 7C to withhold the identities of DEA special agents. Exemption 7F provides an exemption for investigatory records compiled for law enforcement purposes to the extent that disclosure of them would "endanger the life or physical safety of law enforcement personnel."[90] DEA agents clearly fall within this Exemption.[91] At the time of his escape, Malizia was serving a sentence resulting from his complicity in a major drug trafficking enterprise. DEA agents, whose job it is to stop such drug dealing, often through undercover work, would find their lives unnecessarily jeopardized if their identities were revealed in context of this investigation.[92] Since the size and context of these deletions support their asserted content, such as when a blacked-out space the size of a name is preceded by "Agent" or followed by "DEA," summary judgment is granted.

Accordingly, defendants' motion for summary judgment is granted in its entirety.

So ordered.

---

**88.** 5 U.S.C. § 552(b)(7)(E).

**89.** Price Aff. at 22–23.

**90.** 5 U.S.C. § 552(b)(7)(F).

**91.** *See Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977); *Nanez v. DEA*, 497 F.Supp. 209, 212 (S.D.N.Y.1980).

**92.** Price Aff. at 24.