**Harold MASSEY, Plaintiff–Appellant,**

v.

**FEDERAL BUREAU OF INVESTIGA-TION, U.S. Department of Justice, Defendants–Appellees.**

**No. 1345, Docket 92–6086.**

United States Court of Appeals, Second Circuit.

Argued May 6, 1993.

Decided Aug. 27, 1993.

Thomas I. Sheridan, III, New York City (Peter R. Bain, Haythe & Curley, of counsel), for plaintiff-appellant.

Donald P. Simet, Asst. U.S. Atty., Buffalo, NY (Dennis C. Vacco, U.S. Atty., W.D.N.Y., of counsel), for defendants-appellees.

Before: MESKILL, Chief Judge,* PIERCE and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Harold Massey appeals from the judgment of the United States District Court for the Western District of New York (Curtin, *J.*), granting the summary judgment motion of defendants-appellees Federal Bureau of Investigation (the "FBI") and United States Department of Justice, and dismissing Massey's Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, complaint.

## BACKGROUND

On April 26, 1988, Massey requested from the Rochester, New York office of the FBI the release under FOIA of documents related to his New York State murder conviction. The FBI located two documents responsive to Massey's request. The first is a reproduction of a newspaper article, which the FBI

* After argument but before decision, Chief Judge Meskill became a Senior Circuit Judge.

produced after redacting internal FBI notations containing the name of an FBI agent, the initials of other FBI employees, and certain administrative markings, pursuant to certain exemptions to FOIA. The second is an internal FBI memorandum which the FBI withheld in its entirety, also pursuant to certain FOIA exemptions.

Massey appealed the redaction of the newspaper article and withholding of the memorandum to the Office of Information and Privacy of the Department of Justice, which affirmed the FBI's decision. On January 5, 1989, Massey filed the instant action to obtain the withheld information under FOIA. And, on February 7, 1992, Judge Curtin granted the defendants' motion for summary judgment and dismissed the complaint.

On this appeal, we consider whether the FBI properly invoked certain exemptions to FOIA in support of its redaction of one document and withholding of the other.

## DISCUSSION

■ A federal court reviews *de novo* an agency's decision to withhold or redact records requested under FOIA. *See* 5 U.S.C. § 552(a)(4)(B). The statutory exemptions provided under FOIA are "narrowly construed with doubts resolved in favor of disclosure." *Federal Labor Relations Auth. v. United States Dep't of Veterans Affairs,* 958 F.2d 503, 508 (2d Cir.1992) (hereinafter *"FLRA"*). And, where an agency withholds or redacts documents requested under FOIA, the agency bears the burden of sustaining its action. *See* 5 U.S.C. § 552(a)(4)(B); *see also Hopkins v. HUD,* 929 F.2d 81 (2d Cir.1991).

■ The FBI invoked FOIA exemption (b)(2), which protects from disclosure records "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), in support of its withholding of "informant symbol numbers, along with other source identifying information, and purely administrative markings, i.e. file numbers."

■ Massey argues that the (b)(2) exemption relates only to agency personnel rules and practices, and thus does not apply to information concerning non-employee infor-

mants. This argument is unsupported by case law.

Exemption (b)(2) relates to information concerning "'those rules and practices that affect the internal workings of an agency[,]' and, therefore, would be of no genuine public interest." *Buffalo Evening News, Inc. v. United States Border Patrol,* 791 F.Supp. 386, 391 (W.D.N.Y.1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1056 (D.C.Cir.1981) (en banc)) (alteration in *Buffalo Evening News*); *see Malizia v. United States Dep't of Justice,* 519 F.Supp. 338, 344 (S.D.N.Y.1981) (Weinfeld, J.); *see also Department of the Air Force v. Rose,* 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). Such internal agency information may be withheld if it is of "no genuine public interest" *or,* if the material is of public interest, and "the government demonstrates that disclosure of the material would risk circumvention of lawful agency regulations." *Buffalo Evening News, Inc.,* 791 F.Supp. at 391; *see Founding Church of Scientology of Washington, D.C., Inc. v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983).

As Judge Weinfeld stated in *Malizia,* "there is no legitimate public interest in the FBI's practice of labelling and identifying its sources." 519 F.Supp. at 344. Moreover, disclosure of such information could do substantial damage to the FBI's law enforcement activities, for example by compromising the confidentiality of sources. *See id.* at 344–45. Thus, such information "plainly fall[s] within the ambit of Exemption 2." *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980); *see Malizia,* 519 F.Supp. at 344–45.

■ Massey also challenges the FBI's invocation of exemption (b)(7)(D), which exempts from disclosure, *inter alia,* agency

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation

..., information furnished by a confidential source....

5 U.S.C. § 552(b)(7)(D). The FBI employed this exemption in withholding the identities of and information provided by informants, including cooperating nonfederal law enforcement sources, in connection with a criminal investigation involving Massey.

There is no dispute that the records requested by Massey were compiled by the FBI for law enforcement purposes. However, Massey contends that the defendants have not proffered sufficient evidence to establish that the information withheld under exemption (b)(7)(D) was provided by a confidential source. An agency invoking exemption (b)(7)(D) is not required to provide evidence of an express promise of confidentiality. *See United States Dep't of Justice v. Landano,* — U.S. ——, ——, 113 S.Ct. 2014, 2021–24, 124 L.Ed.2d 84 (1993). Rather, a court may infer that information was provided in confidence. *See id.* In *Donovan v. FBI,* 806 F.2d 55 (2d Cir.1986), we held that a court may find an implied assurance of confidentiality "when 'it is apparent that the agency's " 'investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known.' " ' " *Id.* at 61 (quoting *Diamond v. FBI,* 707 F.2d 75, 78 (2d Cir.1983) (quoting *Lamont v. Department of Justice,* 475 F.Supp. 761, 779 (S.D.N.Y.1979) (citation omitted) (Weinfeld, J.)), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984)). The defendants contend that *Donovan* implied that such inferences could be drawn in connection with most criminal investigations.

However, our construction of exemption (b)(7)(D) in *Donovan* was limited by the Supreme Court's recent opinion in *Landano.* In *Landano,* the FBI argued that, for purposes of exemption (b)(7)(D), "a presumption of confidentiality arises whenever any individual or institutional source supplies information to the [FBI] during a criminal investigation." — U.S. at ——, 113 S.Ct. at 2018. The Court rejected this "categorical" presumption of confidentiality in favor of a "particularized approach" that looks to "factors such as the nature of the crime that was investigated and the source's relation to it" in order to determine whether confidentiality may be inferred. *Id.* — U.S. at —— – ——, 113 S.Ct. at 2023–24; *see also Freeman v. United States Dep't of Justice,* No. Civ. A. 92–0557–LFO, 1993 WL 260694, at *3 (D.D.C. June 28, 1993) (under reasoning of *Landano,* "the government must present specific evidence justifying an assertion that a condition of confidentiality was implied").

*Landano* noted that courts may look to the risks an informant might face were her identity disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality. *See* — U.S. at ——, 113 S.Ct. at 2023. The *Landano* Court cited *Donovan* approvingly in this regard, noting our focus upon the risk that the FBI investigation of murders in El Salvador at issue in that case might have been impaired if sources feared disclosure of their identities. *See id.; see also Donovan,* 806 F.2d at 61. The Court also noted that there may be certain "generic circumstances" in which confidentiality can be inferred, for example, where an informant is paid by the government, or where an informant provides information concerning offenses such as gang-related shootings. *See Landano,* — U.S. at ——, 113 S.Ct. at 2023; *see also Manchester v. DEA,* 823 F.Supp. 1259, 1272 (E.D.Pa.1993) (under reasoning of *Landano,* "confidentiality may be generally inferred from the character of the crime at issue and the source's relation to the crime").

On the record before us, we cannot establish whether the particular circumstances under which the FBI received the information at issue give rise to an inference of confidentiality. We thus vacate that portion of the district court's decision upholding the FBI's withholding and redaction of information identifying or provided by putatively confidential sources, and remand to the district court for further inquiry. On remand, the FBI should provide the court and Massey with a supplemental affidavit explaining the nature of the criminal investigation discussed in the internal FBI memorandum and the relation of the purportedly confidential source or sources to it, as required by *Landano. See, e.g., Oliva v. United States Dep't*

*of Justice,* 996 F.2d 1475, 1477 (2d Cir.1993) (following *Landano,* remanding case in which agency invoked exemption (b)(7)(D) for "more particularized analysis to determine whether or not documents should be exempt").

 Finally, Massey challenges the FBI's invocation of exemption (b)(7)(C), which applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such [materials] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The FBI applied exemption (b)(7)(C) in withholding information from both the newspaper article and the internal FBI memorandum, disclosing the identities of FBI agents, cooperating witnesses and third parties, including cooperating law enforcement officials.

 The exemption applies only if the invasion of privacy that would result from release of the information outweighs the public interest in disclosure. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *FLRA,* 958 F.2d at 508–13. The privacy interest implicated in this case "is exactly the sort of 'personal privacy' interest that Congress intended Exemption 7(C) to protect." *Lawyers Comm. for Human Rights v. INS,* 721 F.Supp. 552, 565 (S.D.N.Y.1989) (quoting *Reporters Comm.,* 489 U.S. at 764, 109 S.Ct. at 1477).

 As we stated in *FLRA,* individuals, including government employees and officials, have privacy interests in the dissemination of their names. *See FLRA,* 958 F.2d at 510–11; *Kuzma v. Internal Revenue Serv.,* 775 F.2d 66, 69 (2d Cir.1985). Public disclosure of the names of FBI agents and other law enforcement personnel discussed or identified in the documents could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs. *See, e.g., Stone v. FBI,* 727 F.Supp. 662, 664 (D.D.C.) (FBI "agents' status as public officials does not rob them of their privacy rights"), *aff'd,* No. 90–5065, 1990 WL 134431 (D.C.Cir. Sept. 14, 1990).

The privacy interests of private persons identified in the documents are potentially greater, insofar as disclosure of their names might reveal that they were suspects in criminal investigations. As the Supreme Court held in *Reporters Comm.,* individuals have substantial privacy interests in information that either confirms or suggests that they have been subject to criminal investigations or proceedings. *See* 489 U.S. at 767, 109 S.Ct. at 1478; *see also Lawyers Comm.,* 721 F.Supp. at 565 (" 'It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carr[ies] a stigmatizing connotation.' ") (quoting *Branch v. FBI,* 658 F.Supp. 204, 209 (D.D.C.1987)) (altered to conform with original); *accord Buffalo Evening News,* 791 F.Supp. at 392. Indeed, the Supreme Court has adopted a categorical balancing rule in favor of withholding government rap sheet information. *See Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. at 1486.

 Massey suggests that the individuals identified in the documents may have waived their confidentiality interests through public disclosure of their identities or the passage of time. *See Diamond v. FBI,* 532 F.Supp. 216, 227 (S.D.N.Y.1981) (ordering agency to submit affidavit stating whether individuals' "privacy is still at issue"), *aff'd,* 707 F.2d 75 (2d Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). However, we are not convinced that the doctrine of waiver applies to exemption (b)(7)(C). Persons can retain strong privacy interests in government documents containing information about them even where the information may have been public at one time. *See Reporters Comm.,* 489 U.S. at 762–63, 109 S.Ct. at 1476–77 (categorical presumption of privacy interest in rap sheets applies even where contents may previously have been released to press).

 Under exemption (b)(7)(C), once an agency establishes that there is a privacy interest in information compiled for law enforcement purposes, that interest must be balanced against the value of the information in furthering FOIA's policy goal of disclosing

internal agency activities to the public. *See generally Reporters Comm.*; *FLRA,* 958 F.2d at 510. On the record before us, we are not convinced that any substantial public interest would be served by disclosure of the information withheld under exemption (b)(7)(C).

As the *Reporters Comm.* Court stated, disclosure of information "that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" does not serve the policies underlying FOIA. 489 U.S. at 773, 109 S.Ct. at 1482. There is no basis for concluding that disclosure of the names of FBI officials and other law enforcement personnel named in the documents would significantly serve the public disclosure policies of FOIA. Identification of the officials will not reveal any significant information concerning the conduct and administration of FBI investigations. And Massey does not contend that the FBI engaged in wrongdoing in connection with a prosecution or other law enforcement activities, giving rise to a significant public interest in disclosure of officials' identities. *See Hale v. United States Dep't of Justice,* 973 F.2d 894, 901 n. 8 (10th Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993); *Buffalo Evening News,* 791 F.Supp. at 398–99; *see also Rojem v. United States Dep't of Justice,* 775 F.Supp. 6, 11 (D.D.C.1991) (upholding non-disclosure of identities of law enforcement personnel where plaintiff presented "no factual basis upon which the Court can find that there exists even a question as to any agency's performance of its duties").

Disclosure of the identities of private persons involved or possibly implicated in criminal investigations would be even less likely to shed light upon the FBI's performance of its public duties.

■ The identifying information in the documents may be useful to Massey in his efforts to overturn his criminal conviction. However, the mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest. *See Hale,* 973 F.2d at 901; *Miller v. Bell,* 661 F.2d 623, 631 (7th Cir.1981) (per curiam), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982); *see also Stone,* 727 F.Supp. at 667 (" 'FOIA was not de-

signed to benefit private litigants.' ") (quoting *Johnson v. United States Dep't of Justice,* 739 F.2d 1514, 1519 (10th Cir.1984)). Indeed, the identity of the requesting party and the use that party plans to make of the requested information has no bearing on the assessment of the public interest served by disclosure. *See, e.g., Reporters Comm.,* 489 U.S. at 771, 109 S.Ct. at 1481 (disclosure cannot turn on the purposes for which the request is made; "[e]xcept for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of" a request under FOIA).

Given that no substantial public interest would be served by disclosure of any of the information withheld under exemption (b)(7)(C), "*any* invasion of privacy threatened by disclosure ... is 'clearly unwarranted.' " *FLRA,* 958 F.2d at 513. Thus, Massey's challenge to the FBI's invocation of exemption (b)(7)(C) fails.

### CONCLUSION

The judgment of the district court is affirmed with respect to the FBI's invocation of exemptions (b)(2) and (b)(7)(C), and vacated and remanded for further proceedings with respect to the information withheld under exemption (b)(7)(D).