Herbert THOMAS, Plaintiff,

v.

OFFICE OF the UNITED STATES AT-
TORNEY FOR the EASTERN DIS-
TRICT OF NEW YORK, Defendant.

No. 93 CV 3128 (FB).

United States District Court,
E.D. New York.

June 12, 1996.

Herbert Thomas, Comstock, NY, pro se.

Zachary W. Carter, United States Attorney, Eastern District of New York, Civil Division by E. Michael Dressler, Special Ass't United States Attorney, Brooklyn, New York, for Defendant.

### MEMORANDUM AND ORDER

BLOCK, District Judge:

Plaintiff *pro se* Herbert Thomas ("Thomas") seeks disclosure pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of records and documents contained in the files of the United States Attorney's Office for the Eastern District of New York ("USAO–EDNY") relating to Bruce Cutler's ("Cutler") connections with and alleged involvement in the activities of John Gotti ("Gotti") and the Gambino Crime Family.

The USAO–EDNY, having previously denied Thomas' administrative request as an invasion of Gotti's and Cutler's personal privacy, *see* 5 U.S.C. §§ 552(b)(6) and (7)(C), now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint on the same grounds.

### I. BACKGROUND

The facts in this case are not in dispute. Thomas, currently incarcerated at the Great Meadow Correctional facility, was arrested on January 9, 1978 by the New York City Police for a murder and robbery at the "Night Cap Club," located at 880 Jamaica Avenue, Brooklyn, New York.[1] He was subsequently indicted for the murder and robbery and was convicted of murder, after a jury trial, on December 7, 1978. Cutler, the subject of Thomas' FOIA request, was the Assistant District Attorney ("ADA") who prosecuted him.

Following his service as an ADA, Cutler entered into private practice as a criminal defense attorney. One of Cutler's clients was John Gotti, the reputed boss of the Gambino Crime Family. Cutler however, was disqualified from representing Gotti in the case encaptioned *United States v. Gotti,* 771 F.Supp. 552, because the Court found, *inter alia,* that his role as "house counsel" for the Gambino Crime Family created a conflict of interest that could not be waived. *United States v. Gotti,* 771 F.Supp. 552, 560–63 (E.D.N.Y.1991) (Glasser, J.). Based on Cutler's position as "house counsel" for the Gambino Crime Family, Thomas argues that Cutler had a "personal concern" and derived "personal benefit" from his prosecution of Thomas because the "Night Cap Club" was connected with Gotti, the Gambino Crime Family and Organized Crime. Thomas is apparently of the opinion that Cutler was "involved" with Gotti during the course of his service as an ADA and that this alleged involvement compromised Cutler's prosecution of Thomas. Presumably in preparation for a collateral attack on his conviction,

---

**1.** The facts concerning Thomas' arrest and conviction were supplied by Thomas in his letter appealing the denial of his FOIA request, dated January 20, 1993. *See also* Compl. ¶ 3.

Thomas requested documents from the files of the USAO–EDNY compiled during its investigation and prosecution of Gotti, which he believes would support this view.

**The Request**

By letter dated May 18, 1992, Thomas requested access to all records and documents maintained by the USAO–EDNY pertaining to Cutler and relating to Cutler's involvement with the Gambino Crime Family or Organized Crime, as well as a copy of Judge I. Leo Glasser's June 1991 order and decision barring Cutler from appearing as counsel for Gotti. Having received no response to his initial letter, Thomas wrote a second letter explaining that he interpreted the non-reply as a denial of his request and that he wished to appeal that denial. That letter was received on July 17, 1992 by the Executive Office for United States Attorneys ("EOUSA") and appears to have been treated as an initial request.

**The Response**

The EOUSA subsequently advised Thomas, preliminarily, that: 1) as a third party requester, he would receive only public court records and news clippings concerning the prosecution and conviction of the subject of his request unless he obtained authorization from the subject granting access; 2) both the Privacy Act, 5 U.S.C. § 552a(b) and two FOIA exemptions, 5 U.S.C. §§ 552(b)(6) and (7)(C), prohibited the release of any non-public records that might exist concerning the subject of his request; and 3) Thomas had thirty days in which to advise whether he was still interested in having his request processed.

The two FOIA exemptions invoked by the USAO–EDNY are designed to protect an individual's privacy interest in materials contained in government files. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes records or information compiled for law enforcement purposes from disclosure, "but only to the extent that the production of such [materials] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thomas does not dispute that the materials he requested were compiled for law enforcement purposes.

The letter further informed Thomas that it was not a formal denial since the EOUSA had not yet contacted the district office in question, and thus, had not yet determined whether any records exist concerning the subject of his request.[2] Thomas asked the EOUSA to fully process his request. He was subsequently informed in a letter from the EOUSA that his request had been processed under both the FOIA and the Privacy Act, 5 U.S.C. § 552a, and had been partially denied pursuant to the two FOIA exemptions previously referenced.[3]

The letter noted that Thomas had not received any authorization for release of the records from the subject of his request, stating as follows:

> You have requested records concerning a third party. Without release authorization from the subject of your request we are prohibited by both the Privacy Act and the Freedom of Information Act from disclosing any non-public records that may exist concerning the subject.

Letter from Bonnie L. Gay to Thomas of 1/5/93. Therefore, Thomas was only provided with public court records and news clippings, totalling sixty-five pages.

---

**2.** It appears that the EOUSA mistakenly believed Thomas' request was for documents concerning Gotti, rather than Cutler, since the "Subject of Request" listed on the letter is "John Gotti."

**3.** The letter also states that the records sought "are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 C.F.R. 16.81." This letter is the only correspondence from the EOUSA that mentions this regulation and the USAO–EDNY did not reference the regulation in its motion for summary judgment. In any event, the Privacy Act "absolutely prohibits the non-consensual release of information personal to an individual except as required under the FOIA." *Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 74 (2d Cir.1981); 5 U.S.C. § 552a(b).

## The Appeal

By letter dated January 20, 1993, Thomas appealed the denial of his request, described his connection to Cutler, and clarified that his request sought information about Cutler's involvement with and knowledge of the criminal activities of Gotti and the Gambino Crime Family. Thomas was subsequently informed that his appeal had been denied:

> After careful consideration of your appeal, I have decided to affirm the initial action in this case. Lacking an individual's consent, proof of death, or an overriding public interest, disclosure of law enforcement records pertaining to an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

Letter from Richard L. Huff to Thomas of 1/21/93.[4] The letter further informed Thomas of the availability of judicial review of the EOUSA's decision in the United States District Court.

## The Complaint

█ On July 14, 1993, Thomas filed a complaint seeking an order compelling production by the USAO–EDNY of: 1) all materials in the public case file regarding the criminal prosecution of Gotti in the Eastern District of New York, docketed as 90–CR–1051; 2) copies of documents relating to Cutler's involvement and connection with Gotti, the Gambino Crime Family and Organized Crime; 3) names and addresses of all properties and businesses owned and operated by Gotti, the Gambino Crime Family and Organized Crime; and 4) "copies of any and all documents with the following names—Night Cab Club, 880 Jamaica Avenue, Brooklyn, New York; Inner Circle Club, Metropolitan Avenue, Queens, New York; Jerry's Bar, Myrtle Avenue, Queens, New York; and Fritz's Bar, Myrtle Avenue, Queens, New York."[5] The complaint also seeks costs and disbursements pursuant to 5 U.S.C. § 552(a)(4)(E).

## The Summary Judgment Motion

In support of its motion for summary judgment, the USAO–EDNY has submitted a declaration from John F. Boseker ("Boseker"), an attorney advisor with the EOUSA whose responsibilities include the review of FOIA/Privacy Act requests for access to records located at the EOUSA and in the United States Attorneys' offices throughout the country. According to Boseker, all of the records reviewed in the matter were located in the USAO–EDNY and were maintained in the "Criminal Case File System (Justice/USA–007) entitled *United States of America v. Gotti*, Criminal Case No. 90–Cr–1051[,]" which "pertains to the investigation and prosecution of a third party individual defendant for violations of criminal statutes pertaining to organized crime and derivative offenses." (Boseker Decl. ¶ 10.)

With regard to the invocation of Exemption 6, the declaration states that "Release of [the requested] information was determined to constitute a clearly unwarranted invasion of the personal privacy of the third party defendant in the subject case[,]" and that the EOUSA asserted "Exemption [ ]6 on an undetermined number of documents in the subject case file." (Boseker Decl. at ¶ 11.) Similarly, with regard to Exemption 7(C), the declaration states that "the EOUSA asserted this exemption to withhold all documents contained within [the] case file other than the [ ] 65 pages of public source material[,]" after "determin[ing] that there was no public interest in the release of this information nor

---

4. This letter was the first to clearly state that the subject of Thomas' request was Bruce Cutler: "You appealed from the action of the [EOUSA] on your request for access to records pertaining to Bruce Cutler."

5. To the extent the relief requested by Thomas' complaint goes beyond the scope of his FOIA request, (e.g., by requesting the names of owners of certain nightclubs), the Court does not pass on these requests since they were not raised at the administrative level. *See, e.g., Spannaus v. Dep't of Justice,* 824 F.2d 52 (D.C.Cir.1987). The Court does not have jurisdiction over requests not initially made to a governmental agency because without a request the agency cannot be said to have "withheld" such documents. *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980) ("[F]ederal jurisdiction [in a FOIA action] is dependent upon a showing that the agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.' ").

any interest which would counterbalance the individual's privacy in the information withheld under this exemption." (Boseker Decl. ¶ 12.)

The parties' contentions are predictable. The USAO–EDNY argues that Boseker's declaration adequately demonstrated that it conducted an appropriate search, released sixty-five pages of responsive materials, and properly withheld the remaining materials pursuant to Exemptions 6 and 7(C). Thomas claims that Boseker's declaration was insufficient to justify the withholding and that the USAO–EDNY should have submitted "the traditional *Vaughn* index serially describing each document and why it is being withheld." (Pl. Mem. of Law at 3.).[6] He further argues that even if the declaration were sufficient, the exemptions do not apply because there is a strong public interest in disclosure of the requested documents:

> At present the entire country and public is in a state of chaos and in an abyss of morale [sic] decay, lack of trust in public officials, suspicion and loss of confidence in the country's law enforcement agencies— that is, FBI and EOUSA, therefore, the release of "any information/documents", responsive to plaintiff's FOIA request, would have the effect of restoring trust and confidence back into the public of its law enforcement agencies, among other things, in other words all would benefit by the release of information/documents regarding Mr. Gotti and his criminal activities.

(Pl.'s Aff. and Mem. of Law at 14.)

## II. DISCUSSION

▮ In general, a district court may not grant summary judgment unless "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that any withheld documents fall within an exemption to the FOIA." *Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994), *cert. denied,* 115 S.Ct. 86 (1994); *Ruotolo v. Dep't of Justice,* 53 F.3d 4, 9 (2d Cir.1995). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney,* 19 F.3d at 812.

▮ In enacting the FOIA, Congress expressed a strong policy in favor of public disclosure of information in the possession of federal agencies. *Donovan v. Federal Bureau of Investigation,* 806 F.2d 55, 57–58 (2d Cir.1986); *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 73 (2d Cir.1981). However, "[w]hile favoring disclosure, courts must nevertheless give effect to the specific exemptions set forth in the FOIA." *Donovan,* 806 F.2d at 58. Courts reviewing a federal agency's decision to withhold documents under an exemption engage in de novo review. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 753, 109 S.Ct. 1468, 1471–72, 103 L.Ed.2d 774 (1989); 5 U.S.C. § 552(a)(4)(B).[7]

---

**6.** In order to permit adversarial testing of the government's claim of exemption without compromising the confidential nature of the requested records, the United States Court of Appeals for the D.C. Circuit established specific discovery procedures to be employed in a FOIA case. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* procedures require the government to provide the FOIA plaintiff and the court an itemized "index" of the withheld records that describes each document

or withheld portion and gives a detailed justification of the agency's grounds for withholding, correlating each exemption claimed with the record or portion to which it assertedly applies.

**7.** Section 552(a)(4)(B) provides, in pertinent part, as follows:

> On complaint, the district court ... has jurisdiction to enjoin the agency from withholding and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall deter-

## Exemption 7(C)

 The broader of the two exemptions invoked by the USAO–EDNY is Exemption 7(C), which excludes from disclosure records or information compiled for law enforcement purposes where the production of such materials "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *Reporters Comm.*, 489 U.S. at 755–56, 109 S.Ct. at 1472–73. Under Exemption 7(C), "once an agency establishes that there is a privacy interest in information compiled for law enforcement purposes, that interest must be balanced against the value of the information in furthering FOIA's policy goal of disclosing internal agency activities to the public." *Massey v. Federal Bureau of Investigation*, 3 F.3d 620, 624–25 (2d Cir.1993). As the Supreme Court noted, requests that do not further the FOIA's policy goals will not overcome the exemption:

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose. That purpose however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.... [T]he FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed. Thus, it should come as no surprise that in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen.

*Reporters Comm.*, 489 U.S. at 773–75, 109 S.Ct. at 1481–82.

 There is no doubt that the information requested was compiled for law enforcement purposes and that disclosure of such information, if any exists, would be damaging to Cutler's reputation and would constitute an invasion of Cutler's personal privacy. *See, e.g., Massey*, 3 F.3d at 624 ("[I]ndividuals have substantial privacy interests in information that either confirms or suggests that they have been subject to criminal investigations or proceedings."); *Lawyers Comm. for Human Rights v. Immigration and Naturalization Serv.*, 721 F.Supp. 552, 565 (S.D.N.Y.1989) ("It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carry a stigmatizing connotation.") (quoting *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987)); *The Albuquerque Publishing Co. v. United States Dep't of Justice*, 726 F.Supp. 851, 855 (D.D.C. 1989). Cutler would certainly wish to keep private any information contained in the Gotti file that he was involved in the criminal activities of John Gotti and the Gambino Crime Family. Since a personal privacy interest in information compiled for law enforcement purposes is implicated, the Court inquires whether any countervailing factors exist that would warrant an invasion of that interest.[8]

 The Supreme Court has suggested that in the typical FOIA case in which one citizen seeks information about another, "the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records." *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. at 1481–82. This is certainly true in the present case. Thomas does not seek information in the Gotti file in order to learn the USAO–EDNY's actions during its investigation, but rather, to discover information regarding Cutler's involvement with Gotti and Organized Crime. When the requester does

---

mine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

8. Although there has been a degree of public disclosure regarding Cutler's relationship to Gotti, e.g., his role as "house counsel," Cutler retains privacy interests in preventing further disclosure. As this circuit has noted: "Persons can retain strong privacy interests in government documents containing information about them even where the information may have been public at one time." *Massey,* 3 F.3d at 624.

not seek information about the conduct of the agency in possession of the records "it is inappropriate to order a government agency to release the information sought." *The Buffalo Evening News, Inc. v. U.S. Border Patrol,* 791 F.Supp. 386, 397 (W.D.N.Y.1992); *Landano v. United States Dep't of Justice,* 956 F.2d 422, 430 (3d Cir.1992) ("Only when the information requested reflects directly upon the way that the agency conducts business has the requester placed something on the public interest side of the balancing equation."), *vacated on other grounds and remanded,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

■ Exemption 7(C) is here applicable because the "only interest significantly served by disclosure is the personal interest of the plaintiff, who seeks information for use in a collateral challenge to his conviction." *Triestman v. United States Dep't of Justice,* 878 F.Supp. 667, 670 (S.D.N.Y.1995). This does not raise a FOIA-recognized interest that should be weighed against the subject's privacy interests. *See Massey,* 3 F.3d at 625 ("The identifying information in the documents may be useful to Massey in his efforts to overturn his criminal conviction. However, the mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest.").

■ Moreover, the FOIA is only directed to the conduct of federal agencies and cannot therefore serve as a basis for requests about the conduct of a state agency, such as a District Attorney's office. "It has been held that no public interest exists in federal records that might reveal alleged misconduct by state officials; such an attenuated interest 'falls outside the ambit of the public interest the FOIA was enacted to serve.'" Justin D. Franklin and Robert F. Bouchard, ed., *Guidebook to the Freedom of Information and Privacy Acts* § 1.10[3] at 1–290 (1996) (quoting *Reporters Comm.,* 489 U.S. at 775, 109 S.Ct. at 1482); *Landano,* 956 F.2d at 430 ("[T]here is no FOIA-recognized public inter-

est in discovering wrongdoing by a state agency."). Thus, even assuming a strong public interest in disclosure of wrongdoing at the District Attorney's Office, the FOIA is not the vehicle for seeking such information.

Because there is no question that Thomas has requested law enforcement records and the lack of public interest in the requested documents is evident from the nature of the request, the general declaration submitted by the USAO–EDNY is here sufficient to satisfy the USAO–EDNY's burden to substantiate withholding documents pursuant to Exemption 7(C). *See Carney,* 19 F.3d at 812 (holding that where an agency's submissions are adequate on their face, "the district court may 'forgo discovery and award summary judgment on the basis of affidavits.'" (citation omitted)); *Brown,* 658 F.2d at 74 (concluding that a *Vaughn* index is unnecessary where "the affidavit ... sets forth the reasons for withholding th[e] information in detail sufficient to allow the District Court to make a determination with respect to the claimed exemptions."). Such a categorical approach has been approved by the Supreme Court:

> [W]e hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

*Reporters Comm.,* 489 U.S. at 780, 109 S.Ct. at 1485. Accordingly, the Court finds that the USAO–EDNY's invocation of Exemption 7(C) was proper and that its withholding of the documents appropriate.[9]

### III. CONCLUSION

For the foregoing reasons, the USAO–EDNY's motion for summary judgment is

---

**9.** Since the Court finds the documents were properly withheld pursuant to Exemption 7(C), the Court does not need to decide whether the documents were also properly withheld pursuant to Exemption 6. *See Reporters Comm.,* 489 U.S.

at 762 n. 12, 109 S.Ct. at 1476 n. 12 ("Because Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6.").

granted and the complaint is dismissed.[10]

**SO ORDERED:**

---

10. Thomas is, of course, not entitled to costs or disbursements under 5 U.S.C. § 552(a)(4)(E) since the USAO–EDNY properly withheld the requested materials and no additional information was disclosed as a result of the filing of this action. *See Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir.1976) ("[In order to obtain costs, plaintiff must show] at a minimum that the prosecution of the action could reasonably be regarded as necessary and that the action had substantial causative effect on the delivery of the information."); *Muffoletto v. Sessions*, 760 F.Supp. 268, 273 (E.D.N.Y.1991) (Spatt, J).