Ronnie G. FEDRICK, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE and Drug Enforcement
Administration, Defendants.

No. 95–CV–558H.

United States District Court,
W.D. New York.

Sept. 19, 1997.

Ronnie G. Fedrick, Dannemora, NY, pro se.

Donald P. Simet, Jane B. Wolfe, U.S. Atty., Buffalo, NY, for U.S. Dept. of Justice, Drug Enforcement Admin.

## DECISION AND ORDER

LARIMER, Chief Judge.

This case was previously assigned to United States Magistrate Judge Carol E. Heckman to hear and report on dispositive motions filed by the parties. On September 19, 1997, Magistrate Judge Heckman issued a Report and Recommendation that defendants' motion for summary judgment (Dkt.# 21) should be granted. Plaintiff filed objections to the Magistrate Judge's Report and Recommendation on October 9, 1997. Although these objections may be untimely, nevertheless, I will accept them and have fully considered each and every objection raised by plaintiff.

I have carefully reviewed the Report and Recommendation as well as plaintiff's objections, and I see no basis to modify the Magistrate Judge's Report and Recommendation. Therefore, I accept and adopt, in its entirety, the thorough and well-analyzed Report and Recommendation of Magistrate Judge Heckman. Her analysis of the Freedom of Information Act and its exemptions is entirely sound and there is no basis whatsoever to modify her recommendation.

## CONCLUSION

I adopt in its entirety the Report and Recommendation of Magistrate Judge Heckman filed September 19, 1997.

Defendants' motion for summary judgment (Dkt.# 21) is granted and the complaint is dismissed.

IT IS SO ORDERED.

1. Unless otherwise noted, references to "Ex." are to the Exhibits attached to the Declaration of

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. David G. Larimer for pretrial matters and to hear and report on dispositive motions, in accordance with 28 U.S.C. § 636(b)(1). Defendants have moved for summary judgment. For the following reasons, defendants' motion should be granted.

## BACKGROUND

The following facts are not in dispute. On January 20, 1991, plaintiff sent a letter to the United States Department of Justice ("DOJ") Drug Enforcement Administration ("DEA") in Washington, D.C., requesting the following information:

1. Evidence/Custodian Log entries pertaining to File No. C2–87–X032, Exhibits 1, 2, 3 & 4, all of which were mailed from the DEA's Buffalo Resident Office between June 18, 1987 and July 16, 1987, to the Northeast Laboratory of the DEA.

2. Return Receipts for Exhibits 1, 2, 3 & 4 of File No. C2–87–X032 which were sent by Registered Mail to the Northeast Laboratory of the DEA by the Buffalo Resident Office.

3. All tape recorded conversations obtained during the investigation of File No. C2–87–X032.

(Ex. A).[1] The request was made "[p]ursuant to the Freedom of Information Law ..." (*id.*). As noted in his letter, plaintiff was an inmate at the Attica Correctional Facility at the time (*id.*).

On February 20, 1991, John H. Langer, then Chief of the DEA's Freedom of Information Section, sent plaintiff a letter acknowledging that the DEA had received plaintiffs request, and had assigned it Request No. 91–190–P (Ex. B). On May 11, 1991, plaintiff sent another letter to the DEA

Kevin J. Janet, Item 23, Exhibit A.

in Washington requesting additional information about Exhibits 1, 2, 3 and 4 of File No. C2–87–X032 (Ex. C). The DEA considered this request as part of Request No. 91–190–P (*id.*).

On June 4, 1991, the DEA released to plaintiff 34 pages of material deemed responsive to Request No. 91–190–P. Portions of these documents were redacted, and several other documents were withheld, pursuant to exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F) of the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552(b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F), and exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2) [2] (Ex. D).

Meanwhile, on April 29, 1991, plaintiff sent another letter to the DEA in Washington requesting "[a]ll investigations and reports conducted by the [DEA] between March 1986 through July 1989, of which I was the target" (Ex. E). The DEA designated this request as No. 91–722–P (Ex. F). On June 3, 1991, Mr. Langer sent plaintiff a letter advising him that no information was available "other than that previously sent" in connection with the processing of No. 91–190–P (*id.*).

On July 27, 1991, plaintiff sent another letter to the DEA in Washington requesting further information about Exhibits 1 through 4 of File No. C2–87–X032 (Ex. G). The DEA designated this request as No. 91–1815–P (Ex. I). On September 4, 1991, having received no response to his July 27, 1991 request, plaintiff sent a letter of appeal to the DOJ Office of Information and Privacy (Ex. H).

On July 22, 1992, Richard L. Huff, Co–Director of the DOJ Office of Information and Privacy, sent plaintiff a letter explaining the action that had been taken on his appeal, as follows:

As a result of discussions between DEA personnel and members of my staff, a supplemental release of Exhibits 3 and 4 either has been or will soon be made available to you directly by the DEA. In light of this fact and after careful consideration of your appeal, I have otherwise decided to affirm the action in this case. The documents responsive to your request, including the totality of Exhibits 1 and 2, are exempt from the access provision of the Privacy Act of 1974, pursuant to 5 U.S.C. § 552a(j)(2). *See* 28 C.F.R. § 16.98. Accordingly, your access rights are limited to those provided by the Freedom of Information Act. Certain information on Exhibits 3 and 4 and all of the information on Exhibits 1 and 2 was properly withheld from you pursuant to 5 U.S.C. § 552(b)(2), (7)(C), (7)(D) and (7)(F). These provisions pertain to purely internal agency practices and to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties (in this instance those of investigative interest to the DEA), to disclose the identities of confidential sources and information furnished

---

**2.** 5 U.S.C. § 552a(j) provides, in pertinent part:

**General exemptions.**—The head of any agency may promulgate rules ... to exempt any system of records within the agency from any part of this section ... if the system of records is—

    \*    \*    \*    \*    \*    \*

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and proba-

tion status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

According to the declaration of DEA Attorney Advisor Kevin J. Janet, submitted in support of defendants' summary judgment motion (Item 23, Ex. A, ¶ 25), all records responsive to plaintiff's requests have been exempted from the access provisions of the Privacy Act by the Attorney General, pursuant to 5 U.S.C. § 552a(j)(2). However, these records have been processed under the FOIA. *See* 5 U.S.C. § 552a(t)(1), (2) (agency may not rely on exemption contained in one Act to withhold records accessible under the other).

by such sources, and to endanger the life or personal safety of an individual. Only the names of law enforcement personnel were excised on the basis of 5 U.S.C. § 552(b)(7)(F). This information is not appropriate for discretionary release. (Ex. I). Mr. Huff also advised plaintiff of the right to judicial review of this determination (*id.*). By letter dated July 27, 1992, Mr. Huff transmitted the "excised" copies of Exhibits 3 and 4 to plaintiff (Ex. J).

On September 5, 1993, plaintiff sent another request to the DEA in Washington for information "believed to have been generated between June 18, 1987 and August 14, 1987, under File No. C2–87–X032" (Ex. K). The DEA designated this request as No. 93–1506–P (Ex. L). On December 16, 1993, Freedom of Information Chief Robert A. Rogers sent plaintiff a letter advising him that this request had been processed, and that certain materials would be released and portions would be withheld pursuant to exemptions (b)(2), (b)(7)(C) and (b)(7)(F) of the FOIA, and exemption (j)(2) of the Privacy Act (*id.*).

On May 16, 1994, plaintiff sent a letter to the "Buffalo Resident Office" of the DEA requesting the same information sought in request No. 93–1506–P (Ex. M). This request was designated No. 94–855–P (Ex. N). On June 23, 1994, Mr. Rogers sent plaintiff a letter advising him that "[a]ll of the documents that are releasable from C2–87–X032 have been released in 911–90–P and 91–1815–P. . . . It has been determined that there are no additional documents available" (*id.*). By letter dated July 29, 1994, plaintiff appealed this determination (Ex. O). On January 25, 1995, the appeal was denied (Ex. P).

Meanwhile, on October 17, 1994, plaintiff sent another letter to the DEA in Washington requesting information "believed to have been generated during DEA investigations in Buffalo, New York" (Ex. Q). This request was designated No. 94–1757–P (Ex. R). On November 18, 1994, Mr. Rogers sent plaintiff a letter advising him that no further information was available beyond what was sent to him under his previous five requests (*id.*). By letter dated December 6, 1994, plaintiff appealed this determination (Ex. S). On May 31, 1995, this appeal was denied (Ex. T).

On July 12, 1995, plaintiff filed this action under the FOIA, seeking injunctive relief and damages against Mr. Huff and Mr. Rogers. He claims that he "has been denied due process of discovery in a criminal prosecution" as a result of the DEA's failure to release the requested information (item 1, ¶ 44). On September 26, 1995, defendants filed a motion to dismiss the case for failure to name the proper party (Item 6), and plaintiff subsequently filed a motion to amend the complaint to name the DOJ and DEA as defendants. Upon withdrawal by defendants of the motion to dismiss, this court granted plaintiff's motion for leave to amend (Item 12), and the amended complaint was filed on July 8, 1996 (Item 13). On August 22, 1996, defendants answered the amended complaint (Item 14).

On August 28, 1996, plaintiff filed a motion for an order directing defendants to submit detailed index of the withheld documents, pursuant to *Vaughn v. Rosen*.[3] On December 2, 1996, following a pretrial telephone conference with plaintiff and counsel for defendants, this court issued an order (Item 20) scheduling the briefing of defendants' summary judgment motion, and directing defendants to submit a *Vaughn* affidavit in conjunction with that motion.

Meanwhile, on October 31, 1996, DEA Attorney Advisor Kevin J. Janet sent plaintiff a letter advising him as follows:

> Pursuant to a litigation review of your Freedom of Information Act/Privacy Act

---

**3.** 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Under *Vaughn*, a federal agency may be directed to furnish the court with an affidavit containing sufficient information to determine the validity of the claimed FOIA or Privacy Act exemption, usually including an itemized list of the requested documents, detailing the author, date, number of pages, subject matter of each contested document, and a short explanation of why the document should not be disclosed. *See John Doe Corp. v. John Doe Agency*, 850 F.2d 105, 107 n. 1 (2d Cir.1988); *Quinn v. Dept. of Health and Human Services*, 838 F.Supp. 70, 76 n. 2 (W.D.N.Y.1993).

requests, a supplemental release of 50 pages is being made to you at this time. This release includes 32 pages previously withheld in their entirety and 18 pages released in response to FOIA requests 91–0190 and 93–1506, but with less information withheld. Information on these pages has been withheld pursuant to FOIA exemptions b(2), b(7)(c), (D) and (F) and Privacy Act exemption (j)(2).

All records responsive to your request have been accounted for and processed for release according to the Freedom of Information and Privacy Acts. There is no additional information releasable to you.

(Ex. U).

Defendants move for summary judgment on the ground that the remaining information in plaintiff's DEA file was properly withheld under FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F).[4] Defendants have submitted a *Vaughn* index identifying 83 pages responsive to plaintiff's several FOIA requests (Item 23, Ex. X). According to the *Vaughn* index and Mr. Janet's accompanying declaration (*id.*, Ex. A), 77 of these pages have been released in full or in part to plaintiff. The remaining 6 pages contain personal history reports for persons other than plaintiff, and have been withheld in their entirety.

### DISCUSSION

#### I. FOIA Exemption (b)(2).

The FOIA is structured so that virtually every document generated by a federal agency is available to the public in one form or another, unless it falls within one of the FOIA's nine exemptions. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509–10, 44 L.Ed.2d 29 (1975); *Quinn v. Dept. of Health and Human Services,* 838 F.Supp. 70, 75 (W.D.N.Y.1993). The FOIA provides for the availability of injunctive relief from the district court to order the production of agency documents improperly withheld. 5 U.S.C. § 552(a)(4)(B); *Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1183 (D.C.Cir.1987).

4. According to Mr. Janet's declaration, defendants no longer rely on FOIA exemption (b)(7)(E)

Section (b)(2) of the FOIA provides an exemption from disclosure for "matters that are … related solely to the internal personnel rules and practices of an agency…." 5 U.S.C. § 552(b)(2). This exemption applies to "routine matters" of "merely internal significance" in which the public lacks any substantial or legitimate interest. *Department of Air Force v. Rose,* 425 U.S. 352, 370, 96 S.Ct. 1592, 1603–04, 48 L.Ed.2d 11 (1976); *see also Massey v. Federal Bureau of Investigation,* 3 F.3d 620, 622 (2d Cir.1993); *Buffalo Evening News, Inc. v. United States Border Patrol,* 791 F.Supp. 386, 391 (W.D.N.Y.1992); *Malizia v. United States Dep't of Justice,* 519 F.Supp. 338, 344 (S.D.N.Y.1981).

In this case, the DEA invoked exemption (b)(2) to redact Geographical Drug Enforcement Program ("G–DEP") codes, Narcotics and Dangerous Drugs Information System ("NADDIS") numbers, and informant identifier codes from the documents released to plaintiff in response to his several FOIA requests. As set forth by Mr. Janet in his declaration in support of defendants' summary judgment motion, G–DEP codes are assigned to all DEA cases and include the descriptive classification of the violator, the types and amounts of suspected drugs involved and the geographical location of the suspected criminal activity. NADDIS numbers are multi-digit numbers assigned to persons in whom the DEA has investigative interest. Informant identifier codes are numbers assigned to specific confidential informants which identify the source of specific information (Item 23, Ex. A, ¶ 27). *See Linn v. United States Dep't of Justice,* 1995 WL 417810, at *6 (D.D.C.1995).

Several cases have held that G–DEP, NADDIS and informant identifier codes are properly withheld under the (b)(2) exemption as matters "of internal significance in which the public has no substantial interest." *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485–86 (D.C.Cir.1980); *see also Silets v. United States Dep't of Justice,* 945

(Item 23, Ex. A, ¶ 26).

F.2d 227, 230 (7th Cir.1991), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992); *Williams v. United States Dep't of Justice,* 851 F.2d 1502 (C.A.D.C.1988); *Tamayo v. United States Dep't of Justice,* 932 F.Supp. 342, 344 (D.D.C.1996); *Durham v. United States Dep't of Justice,* 829 F.Supp. 428, 431 (D.D.C.1993); *Watson v. United States Dep't of Justice,* 799 F.Supp. 193, 195 (D.D.C.1992). Furthermore, this information, if disclosed, could "significantly risk [ ] circumvention of agency regulations or statutes" by undermining the integrity of ongoing investigations. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1074 (D.C.Cir.1981)(en banc); *see also Albuquerque Publishing Co. v. United States Dep't of Justice,* 726 F.Supp. 851, 854 (D.D.C. 1989) ("The public has no legitimate interest in gaining information [pertaining to violator and informant codes] that could lead to the impairment of DEA investigations.").

Accordingly, I find that the redaction by the DEA of G–DEP, NADDIS and informant identifier codes was proper under FOIA exemption (b)(2).

## II. FOIA Exemption (b)(7)(C).

■ FOIA exemption (b)(7)(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . ." 5 U.S.C. § 552(b)(7)(C). The DEA asserted this exemption to withhold names, personal information and other details about individuals associated with plaintiff in the criminal activity resulting in plaintiff's arrest, prosecution and conviction. The DEA also relied on this exemption to withhold the names of law enforcement personnel whose names appear in the investigatory reports.

Exemption (b)(7)(C) applies only if the invasion of privacy that would result from release of the information outweighs the public interest in disclosure. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Massey v. Federal Bureau of Investigation,*

*supra,* 3 F.3d at 624. As recognized by the Second Circuit, individuals, including government employees and officials, have privacy interests in the dissemination of their names. *Federal Labor Relations Authority v. United States Dep't of Veterans Affairs,* 958 F.2d 503, 510–11 (2d Cir.1992); *see also Kuzma v. Internal Revenue Service,* 775 F.2d 66, 69 (2d Cir.1985). Public disclosure of the names of DEA special agents and other law enforcement personnel discussed or identified in the documents could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs. *See, e.g., Massey v. Federal Bureau of Investigation, supra,* 3 F.3d at 624; *Stone v. FBI,* 727 F.Supp. 662, 664 (D.D.C.) ("agents' status as public officials does not rob them of their privacy rights"), *aff'd,* 1990 WL 134431 (D.C.Cir. Sept.14, 1990).

The privacy interests of private persons identified in investigatory documents are potentially greater, "insofar as disclosure of their names might reveal that they were suspects in criminal investigations." *Massey, supra.* Indeed, individuals have substantial privacy interests in information that either confirms or suggests that they have been subject to criminal investigations or proceedings. *See Reporters Comm., supra,* 489 U.S. at 767, 109 S.Ct. at 1478–79; *see also Branch v. FBI,* 658 F.Supp. 204, 209 (D.D.C.1987)("It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carr[ies] a stigmatizing connotation."), *quoted in Lawyers Comm. for Human Rights v. INS,* 721 F.Supp. 552, 565 (S.D.N.Y.1989); *accord Buffalo Evening News, supra,* 791 F.Supp. at 392. Thus, the privacy interests implicated in this case are "exactly the sort of 'personal privacy' interest[s] that Congress intended Exemption [ (b)(7)(C) ] to protect." *Lawyers Comm., supra* (quoting *Reporters Comm., supra,* 489 U.S. at 764, 109 S.Ct. at 1477).

In addition, exemption (b)(7)(C) is applicable in this case because the "only interest significantly served by disclosure is the personal interest of the plaintiff, who seeks information for use in a collateral challenge to his conviction." *Triestman v. United States*

*Dep't of Justice,* 878 F.Supp. 667, 670 (S.D.N.Y.1995), *quoted in Thomas v. Office of the United States Attorney for the Eastern District of New York,* 928 F.Supp. 245, 251 (E.D.N.Y.1996). This does not raise a FOIA-recognized interest that should be weighed against the subjects' privacy interests. *See Massey, supra,* 3 F.3d at 625 ("The identifying information in the documents may be useful to Massey in his efforts to overturn his criminal conviction. However, the mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest.").

Accordingly, upon review of the *Vaughn* index in light of these principles, I find that the DEA properly relied on exemption (b)(7)(C) to withhold information pertaining to other individuals subject to the underlying criminal investigation. I also find that the DEA properly withheld the names of government personnel involved in the investigation.

## III. FOIA Exemption (b)(7)(D).

Exemption (b)(7)(D) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source...." 5 U.S.C. § 552(b)(7)(D). According to the *Vaughn* index, the DEA relied on exemption (b)(7)(D) to redact confidential informant codes and confidential source information from five of the pages released to plaintiff in response to his FOIA requests.

■ In assessing the applicability of this exemption, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *United States Dep't of*

*Justice v. Landano,* 508 U.S. 165, 172, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993); see *McDonnell v. United States,* 4 F.3d 1227, 1257 (3d Cir.1993). A source is to be considered "confidential" within the meaning of exemption (b)(7)(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." ' *Landano, supra,* 508 U.S. at 172, 113 S.Ct. at 2019 (quoting S.Rep. No. 93–1200, p. 13 (1974)).

■ In this case, the declaration of Mr. Janet establishes that the DEA obtained the cooperation of informants in the underlying criminal investigation under express promises of confidentiality, in accordance with DEA policy and procedure (Item 23, Ex. A, ¶ 36). This is sufficient to establish the applicability of exemption (b)(7)(D), especially in the absence of any contrary showing by plaintiff. *See, e.g., McDonnell, supra.* 4 F.3d at 1258; *Reiter v. Drug Enforcement Administration,* 1997 WL 470108, at *7 (D.D.C. August 13, 1997); *Plazas–Martinez v. Drug Enforcement Administration,* 891 F.Supp. 1, 3 (D.D.C.1995).

Accordingly, I find that the DEA properly withheld confidential informant identifying codes and information under FOIA exemption (b)(7)(D).

## IV. FOIA Exemption (b)(7)(F).

■ Exemption (b)(7)(F) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to endanger the life or physical safety of any individual...." 5 U.S.C. § 552(b)(7)(F). The DEA relied on this exemption (in conjunction with exemption (b)(7)(C)) to delete the names of special agents, supervisory agents and other law enforcement personnel from the majority of the documents released to plaintiff.

None of plaintiffs submissions in opposition to defendants' summary judgment motion challenge the deletion of the identities of law enforcement personnel. Indeed, "DEA agents clearly fall within [exemption

(b)(7)(F) ]. .... DEA agents, whose job it is to stop ... drug dealing, often through undercover work, would find their lives unnecessarily jeopardized if their identities were revealed in [the] context of [the underlying criminal] investigation." *Malizia v. United States Dep't of Justice, supra,* 519 F.Supp. at 351.

Accordingly, I find as a matter of law that the DEA properly relied on exemption (b)(7)(F) to delete the names of DEA special agents, supervisory agents and other law enforcement personnel from the materials released to plaintiff in response to his FOIA requests.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (Item 21) should be granted, and the case dismissed.